HUGHES, APPELLANT, *v.* AL GREEN, INC.,
D.B.A. MARK DODGE-LINCOLN MERCURY, APPELLEE.

[Cite as Hughes v. Al Green, Inc. (1981),
65 Ohio St. 2d 110.]

(No. 80-744—Decided March 31, 1981.)

*Rumbaugh & DeNicola Co., L.P.A.,* and *Mr. Richard L. Rumbaugh,* for appellant.

*Mr. Geoffrey S. Goll* and *Mr. Robert L. Guehl,* for appellee.

SWEENEY, J. Since the adoption of Article 2 of the Uniform Commercial Code in 1962, the law in Ohio governing contracts for the sale of goods has been codified in R. C. Chapter 1302. Because the appellant-buyer's action is grounded upon what is in essence an alleged breach of a contract for the sale of a motor vehicle, "goods" as defined in R. C. 1302.01(A)(8),[1] resolution of this dispute must be guided by

---

[1] R. C. 1302.01(A)(8) provides, in part:

" 'Goods' means all things (including specially manufactured goods) which are

the provisions of R. C. Chapter 1302,[2] unless superseded by other statutory provisions.

Appellant's argument is based upon the Ohio Certificate of Title Act, R. C. 4505.01 *et seq.,* and pre-U.C.C. case law.[3] Specifically, appellant points to R. C. 4505.04, which provides:

"No person acquiring a motor vehicle from the owner thereof, whether such owner is a manufacturer, importer, dealer, or otherwise, shall acquire any right, title, claim, or interest in or to said motor vehicle until such person has had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for it; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title, or manufacturer's or importer's certificate for said motor vehicle, for a valuable consideration.

"No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:

"(A) By a certificate of title or a manufacturer's or importer's certificate issued in accordance with sections 4505.01 to 4505.19, inclusive, of the Revised Code.

"(B) By admission in the pleadings or stipulation of the parties."

Simplified, appellant's argument is that the appellee car dealer was in breach of contract because on September 21, 1977, when the certificate of title was issued in appellant's name and ownership of the automobile thereby legally transferred to her, the appellant no longer possessed that for

moveable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action.***"

The provisions of R. C. Chapter 1302 have previously been applied to warranties arising under contracts for the sale of motor vehicles. *Goddard* v. *General Motors Corp.* (1979), 60 Ohio St. 2d 41; *Levin* v. *Nielson* (1973), 37 Ohio App. 2d 29.

[2] R. C. 1302.02 provides, in part:

"Unless the context otherwise requires, sections 1302.01 to 1302.98, inclusive of the Revised Code, apply to transactions in goods;***"

[3] *E.g., Brewer* v. *DeCant* (1958), 167 Ohio St. 411; *Garlick* v. *McFarland* (1953), 159 Ohio St. 539; *Veltri* v. *Cleveland* (1957), 167 Ohio St. 90; *Young* v. *Emanaker* (1960), 84 Ohio Law Abs. 481, 164 N.E. 2d 473.

which she bargained, *i.e.,* an *undamaged* 1977 Lincoln Continental, serial No. 7Y82A932511.

Resolution of this cause mandates that we determine whether the buyer or the seller bore the risk of loss or damage to the automobile at the time of the collision, for as summarized by White & Summers, Uniform Commercial Code, Section 5-1, at page 174:

"To say that buyer had the risk of loss at the time the goods were destroyed is to say that he is liable under 2-709 for the price. To say that seller had the risk of loss at the time the goods were destroyed is to say that he is liable in damages to the buyer for nondelivery unless he tenders a performance in replacement for the destroyed goods."

R. C. 1302.53(C) (U.C.C. 2-509) provides that in any case where the contract goods are neither delivered by carrier nor entrusted to a bailee, "* * *the risk of loss passes to the buyer on his receipt[4] of the goods if the seller is a merchant; otherwise the risk passes to the buyer on tender of delivery."

This provision represents a significant shift away from the prior importance of the concept of title in determining the point at which risk of loss passes from seller to buyer.[5] Under the common law, not only did title to the contract goods determine risk of loss, but it also determined the issues of the buyer's right to the goods (through replevin), the seller's right to the purchase price, and the right to proceed against tortfeasors.[6] Under the U.C.C., however, "[e]ach provision of sections 1302.01 to 1302.98, inclusive, of the Revised Code with regard to the rights, obligations, and remedies of the seller, the buyer, purchasers, or other third parties applies irrespective of title to the goods except where the provision refers to such title." R. C. 1302.42 (U.C.C. 2-401).

Thus, as noted in Nordstrom, Sales, Section 130, at page 393:

---

[4] In U.C.C. parlance, "receipt" of goods means taking physical possession of them. R. C. 1302.01(A)(3) (U.C.C. 2-103[1][c] ).

[5] White & Summers, *supra,* at page 175, characterizes the U.C.C.'s new risk of loss approach as, in some ways, "the most radical departure from prior law in Article Two."

[6] 3A Bender's Uniform Commercial Code Service, Section 8.02[1]; see, also, Nordstrom, Sales, Section 125.

"[T]here is * * * one principle which applies to all risk of loss problems. This principle is summarized in one sentence from the Comments:

" 'The underlying theory of these sections on risk of loss is the adoption of the contractual approach rather than an arbitrary shifting of the risk with the "property" in the goods.'

"No longer is the question of title of any importance in determining whether a buyer or a seller bears the risk of loss. It is true that the person with title will also (and incidentally) often bear the risk that the goods may be destroyed or lost; *but the seller may have title and the buyer the risk,* or the seller may have the risk and the buyer the title. In short, title is not a relevant consideration in deciding whether the risk has shifted to the buyer." (Emphasis added.)

Similarly, in 3A Bender's Uniform Commercial Code Service, Section 8.03, it is stated, at page 8-21, that U.C.C. 2-509 (R. C. 1302.53):

" * * * sets forth a contractual approach, as distinguished from the property concept of title, to solving the issues arising when goods are damaged or destroyed. The section focuses on specific acts, such as tender of delivery by the seller, or receipt of the goods or of documents representing the goods by the buyer. Title is relevant under this section only if the parties provide that risk of loss shall depend upon the location of title."

Courts in other states have applied the rules set forth in U.C.C. 2-509 to factual situations analogous to that in the instant cause. In *Martin* v. *Melland's, Inc.* (N.D. 1979), 283 N.W. 2d 76, a contract was entered into in June 1974, in which a farm implement dealer agreed to sell Israel Martin a new truck and attached haystack mover for $35,389. The purchase price was paid with $18,000 in cash and with Martin being credited $17,389 for the trade-in of a used truck with attached haymover. Pursuant to the agreement, Martin executed and delivered title to the used equipment to the dealer within a week. However, Martin retained possession of the used unit as the new unit required certain modifications and was not expected to be ready for delivery for two or three months. In August 1974, the used truck and haymover unit was destroyed by fire while Martin was moving hay.

In the action which followed, Martin argued that both title and the risk of the trade-in unit's loss had passed to the dealer. In applying the risk of loss rules set forth in U.C.C. 2-509, the Supreme Court of North Dakota expressly acknowledged the irrelevance of the location of title to the used truck and haymover. The court determined that with respect to the trade-in unit Martin could be considered a non-merchant seller. Because he had not yet tendered delivery of the trade-in unit to the dealer, Martin bore the risk of loss pursuant to U.C.C. 2-509, irrespective of whether the dealer was the titled owner at the time of the fire.[7]

In the instant cause, the appellant-buyer had received possession of the automobile as partial execution of a merchant-seller's obligations under a purchase contract. Thus, unless other statutory provisions make R. C. 1302.53 inapplicable, the appellant, as a buyer in receipt of goods identified to a contract, must bear the loss of the car's value resulting from the collision.[8]

R. C. 1302.53 does not conflict with R. C. 4505.04. The purpose of the Certificate of Title Act is to prevent the importation of stolen motor vehicles, to protect Ohio bona-fide purchasers against thieves and wrongdoers, and to create an instrument evidencing title to, and ownership of, motor vehicles. *Commercial Credit Corp.* v. *Pottmeyer* (1964), 176 Ohio St. 1; *Switzer* v. *Carroll* (C.A. 6, 1966), 358 F. 2d 424; *Associates Discount Corp.* v. *Colonial Finance Co.* (1950), 88 Ohio App. 205. The Act was not adopted to clarify contractual rights and duties, as was R. C. Chapter 1302.

As stated in *Grogan Chrysler-Plymouth, Inc.* v. *Gottfried* (1978), 59 Ohio App. 2d 91, 94-95:

"R. C. 4505.04 was intended to apply to litigation where

---

[7] See, also, *Ramos* v. *Wheel Sports Center* (1978), 96 Misc. 2d 646, 409 N.Y. Supp. 2d 505 (buyer not yet in receipt of motorcycle did not suffer loss of motorcycle due to theft despite facts that price of motorcycle was fully paid, motorcycle had been registered in buyer's name, and buyer had obtained liability insurance prior to loss); *White Motor Corp.* v. *Bronx-Westchester White Trucks, Inc.* (N.Y. Sup. Ct. 1975), 18 U.C.C. Rep. 382 (fact that dealer had retained title papers to truck as security had no bearing on risk of loss; buyer sustained loss of truck stolen from buyer's garage).

[8] It should be apparent that appellant is thus entitled to any proceeds payable under any insurance policies covering the third-party tortfeasor involved in the collision. See R. C. 1302.96.

the parties were rival claimants to title, *i.e.,* ownership of the automobile; to contests between the alleged owner and lien claimants; to litigation between the owner holding the valid certificate of title and one holding a stolen, forged or otherwise invalidly issued certificate of title; and to similar situations. *Kelley Kar Co.* v. *Finkler* (1951), 155 Ohio St. 541; 5 W. Reserve L. Rev. 403, 404 (1954)."

In cases decided prior to the adoption of the Uniform Commercial Code, the Certificate of Title Act was properly consulted in determining whether a buyer or seller bore the risk of loss or could proceed against third-party tortfeasors because determination of those issues was dependent, under the common law, upon a finding of *ownership.* With ownership no longer being determinative, R. C. 4505.04 is irrelevant to the issue of risk of loss, and thus does not conflict with a U.C.C. risk of loss analysis.

It is apparent that allocating the risk of loss to a buyer of goods prior to the point at which legal title is vested in the buyer would be grossly unfair unless the buyer is able to procure insurance to cover such a risk. Thus, attention is drawn to R. C. 1302.45 (dealing with a buyer's procurement of an insurable interest) vis-a-vis R. C. 4505.04. As is pertinent here, R. C. 1302.45, in part, provides:

"(A) The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers***. In the absence of explicit agreement identification occurs:

"(1) when the contract is made if it is for the sale of goods already existing and identified;"

In *Phillips* v. *Cincinnati Ins. Co.* (1979), 60 Ohio St. 2d 180, at 182, this court joined the ranks of courts which adhere to the principle that " 'a person has an insurable interest in property whenever he would profit by or gain some advantage by its continued existence and suffer some loss or disadvantage by its destruction.' " The court stated that this principle "more clearly and realistically defines an 'insurable interest' than one based on title to the property." Thus, the language of R. C. 4505.04 forbidding any court from recognizing "the right, title, claim, or *interest* of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered,"

unless evidenced by a certificate of title, or otherwise, does not preclude a buyer from obtaining a recognizable *insurable* interest prior to the execution of a certificate of title in his name.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., MCBRIDE, LOCHER, HOLMES and C. BROWN, JJ., concur.

W. BROWN, J., concurs in the judgment.

MCBRIDE, J., retired, of the Second Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Constitution, sitting for P. BROWN, J.