SMITH ET AL., APPELLEES, *v.* NATIONWIDE MUTUAL INSURANCE COMPANY, APPELLANT.

[Cite as Smith *v.* Nationwide Mut. Ins. Co. (1988), 37 Ohio St. 3d 150.]

(No. 87-1357—Submitted April 12, 1988—Decided June 15, 1988.)

*Bradford M. Gearinger* and *Terence E. Scanlon,* for appellees.
*Gary L. Himmel,* for appellant.

WRIGHT, J. In this case, we are asked to determine whether the Ohio Certificate of Title Act[1] or the Ohio Uniform Commercial Code[2] determines the issue of whether an alleged

---

[1] R.C. 4505.01 *et seq.*

[2] R.C. 1302.01 *et seq.*

seller's insurance policy applies with respect to risk of loss or damage after the sale of an automobile. Analysis of the pertinent statutes and recent case law leads us to conclude the Ohio Uniform Commercial Code controls.

R.C. 1302.42(B), U.C.C. 2-401, provides:

"Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place * * *."

R.C. 4505.04, at the time pertinent herein, provided:

"No person acquiring a motor vehicle from the owner thereof * * * shall acquire any right, title, claim, or interest in or to said motor vehicle until such person has had issued to him a certificate of title to said motor vehicle * *.* "

Appellees contend that the two statutes set forth above are in partial conflict. They contend that the Ohio Uniform Commercial Code deals with ownership of goods generally, whereas the Ohio Certificate of Title Act specifically deals with motor vehicles. Applying the statutory rule of construction that the specific controls the general, appellees submit the judgment of the trial court was correct.

Appellant contends the statutes do not conflict. The whole purpose of the Certificate of Title Act, according to appellant, is to settle disputes between alleged owners and lien claimants or wrongdoers, and to prevent the importation of stolen vehicles. Appellant submits the purpose of the Ohio Uniform Commercial Code is to settle disputes regarding contractual rights and duties. Applying the "plain purpose" of each statute, appellant contends the trial and appellate courts misconstrued these statutes and erred as a matter of law by granting appellees' motion for summary judgment.

The current trend in the case law found in Ohio and elsewhere supports appellant's view.[3] In *Hughes* v. *Al Green, Inc.* (1981), 65 Ohio St. 2d 110, 19 O.O. 3d 307, 418 N.E. 2d 1355, we held in the syllabus that "[w]here a motor vehicle identified to a purchase contract is damaged, lost or destroyed prior to the issuance of a certificate of title in the buyer's name, the risk of such damage, loss or destruction lies with either the seller or the buyer as determined by the rules set forth in R.C. 1302.53 (U.C.C. 2-509)." In *Hughes*, the plaintiff purchased a 1977 Lincoln Continental for $12,490. Hughes tendered $1,490 with the balance to be financed through a local bank. After signing a purchase contract, an application for certificate of title, and other papers, Hughes took possession of the vehicle and, on her way home, was involved in an accident. We held that "R.C. 4505.04 is irrelevant to the issue of risk of loss, and thus does not conflict with a U.C.C. risk of loss analysis." *Hughes* at 116, 19 O.O. 3d at 311, 418 N.E. 2d at 1358. Furthermore, the court in *Hughes* noted that "1302.53 does not conflict with R.C. 4505.04. The purpose of the Certificate of Title Act is to prevent the importation of stolen motor vehicles, to protect Ohio bona-fide pur-

[3] See *Waggoner* v. *Wilson* (1973), 31 Colo. App. 518, 507 P. 2d 482; *American Mut. Fire Ins. Co.* v. *Cotton States Mut. Ins. Co.* (1979), 149 Ga. App. 280, 253 S.E. 2d 825; *Motors Ins. Corp.* v. *Safeco Ins. Co. of America* (Ky. 1967), 412 S.W. 2d 584; *Truck Ins. Exch.* v. *Scheunemann* (Tex. Civ. App. 1965), 391 S.W. 2d 130.

chasers against thieves and wrong-doers, and to create an instrument evidencing title to, and ownership of, motor vehicles." *Hughes* at 115, 19 O.O. 3d at 310, 418 N.E. 2d at 1358.[4]

Although *Hughes* involved another U.C.C. section, we hold that the thesis underlying that decision is applicable here. Indeed, it is apparent that R.C. 4505.04 is irrelevant to all issues of ownership except those regarding the importation of vehicles, rights as between lienholders, rights of bona-fide purchasers, and instruments evidencing title and ownership. Otherwise, motor vehicle ownership rights will be determined by the Uniform Commercial Code. After the owner is identified, claims to insurance benefits attach to the owner's insurer. Thus, we hold that the criteria found in R.C. 1302.42(B), and not the Certificate of Title Act, identify the owner of a motor vehicle for purposes of determining insurance coverage in case of an accident. In this case, Roger Smith was clearly the owner of the motor vehicle under the U.C.C. test. Therefore, the Smiths have no claim for benefits under Pierce's policy.

Accordingly, we reverse the judgment of the court of appeals and enter final judgment for appellant.

*Judgment reversed.*

MOYER, C.J., LOCHER, HOLMES and H. BROWN, JJ., concur.

SWEENEY and DOUGLAS, JJ., dissent.

---

[4] We also noted in *Hughes, supra,* that R.C. 4505.04 "does not preclude a buyer from obtaining a recognizable *insurable* interest prior to the execution of a certificate of title in his name." *Hughes* at 117, 19 O.O. 3d at 311, 418 N.E. 2d at 1359. Thus, in the case at bar, Roger Smith could have purchased an insurance policy, even though he did not have a valid title. The fact that he did not obtain insurance indicates his acceptance of the risk of loss.