47 F.3d 1168
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re Christine EDNEY, Debtor.
David M. WHITTAKER, Trustee, Plaintiff-Appellee
v.
FORD MOTOR CREDIT CO., Defendant-Appellant
 No. 93-3907.
 United States Court of Appeals, Sixth Circuit.
 Jan. 17, 1995.
 
 Before: JONES and BATCHELDER, Circuit Judges, and HOOD, District Judge.*
 PER CURIAM.
 
 
 1
 In April 1992, the appellee, trustee for the bankrupt's estate, filed an adversary proceeding in bankruptcy court to avoid, under 11 U.S.C. Sec. 547(b), Appellant Ford Motor Credit Company's lien on the bankrupt's 1992 Ford Probe. On cross-motions for summary judgment, the bankruptcy court found in the trustee's favor and permitted avoidance of the lien. The district court affirmed the bankruptcy's court's ruling, and Ford Motor Credit Company appealed to this court. We affirm.
 
 
 2
 * The facts are undisputed. On December 18, 1991, Christine F. Edney, the debtor, offered to purchase a 1992 Ford Probe from a dealership. Ford Motor Credit Company (FMCC) agreed to finance the purchase. In exchange for FMCC's loan, Edney executed a promissory note and a security agreement in favor of FMCC. FMCC paid the dealer in full for the car. Edney took possession of the car on the same day.
 
 
 3
 On December 31, 1991, the Franklin County Clerk of Courts issued Edney an Ohio Certificate of Title to the 1992 Probe. The certificate noted FMCC's lien.
 
 
 4
 On January 27, 1992, Edney filed a voluntary petition in bankruptcy under 11 U.S.C. Chapter 7. David M. Whittaker, the appellee, was appointed trustee of Edney's estate, and on April 3, 1992, he filed this adversary proceeding under 11 U.S.C. Sec. 547(b).
 
 II
 
 5
 Title 11, Sec. 547(b) of the United States Code provides, in pertinent part,
 
 
 6
 [T]he trustee may avoid any transfer of an interest of the debtor in property--
 
 
 7
 (1) to or for the benefit of a creditor;
 
 
 8
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 
 
 9
 (3) made while the debtor was insolvent;
 
 
 10
 (4) made--
 
 
 11
 (A) on or within 90 days before the date of the filing of the petition; or
 
 
 12
 (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
 
 
 13
 (5) that enables such creditor to receive more than such creditor would receive if--
 
 
 14
 (A) this case were a case under chapter 7 of this title;
 
 
 15
 (B) the transfer had not been made; and
 
 
 16
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 
 
 17
 11 U.S.C. Sec. 547(b).
 
 
 18
 The sole issue of this appeal is whether the issuance of the certificate of title noting FMCC's lien constituted a "transfer of an interest of the debtor in property." Title 11, Sec. 101(58) defines the term "transfer":
 
 
 19
 "[T]ransfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.
 
 
 20
 11 U.S.C. Sec. 101(58) (emphasis added). The bankruptcy court and the district court concluded that the issuance of the certificate of title noting FMCC's lien represented two distinct events: (1) the creation of Edney's unencumbered ownership interest in the car and (2) the transfer of a security interest from Edney to FMCC.
 
 
 21
 FMCC argues that the issuance of the certificate of title noting FMCC's lien represented a single event: the creation of an ownership interest already encumbered by FMCC's lien. In other words, Edney did not transfer a security interest to FMCC; FMCC retained one. FMCC thus contends that Edney never received more than an ownership interest diminished by FMCC's retention of a security interest.
 
 
 22
 The parties stipulated the existence of the factors set forth in Secs. 547(b)(1), (3), (4), and (5). The bankruptcy court determined that the requirement in Sec. 547(b)(2) had been satisfied, and FMCC did not appeal that finding. The existence of a "transfer of an interest of the debtor in property" is a necessary prerequisite to the fulfillment of all five requirements of Sec. 547(b). FMCC is therefore properly understood as conceding that if such transfer occurred, then all five requirements of Sec. 547(b) are satisfied.
 
 III
 
 23
 What constitutes a "transfer" under Sec. 547(b) is a matter of federal law. Barnhill v. Johnson, 112 S.Ct. 1386, 1389 (1992). The definition of "transfer" in Sec. 101(58) of the Bankruptcy Code turns on "property" and "interest" in property. 11 U.S.C. Sec. 101(58). What constitutes an "interest" in property is a matter of state law. Barnhill, 112 S.Ct. at 1389. Therefore, this court looks to Ohio law to determine the scope of Edney's interest in the automobile. Battery One-Stop Ltd. v. Atari Corp. (In re Battery One-Stop Ltd.), 36 F.3d 493, 494 (6th Cir.1994); Bavely v. United States (In re Terwilliger's Catering Plus, Inc.), 911 F.2d 1168, 1171 (6th Cir.1990), cert. denied, 501 U.S. 1212 (1991).
 
 
 24
 FMCC urges us to analyze the nature of Edney's interest using the Ohio Certificate of Title Act (Title Act), Ohio Revised Code Chapter 4505. The trustee counters that Chapter 1302 of the Ohio Revised Code (which codifies Article 2 of the Uniform Commercial Code) determines the nature of Edney's interest in the property. The bankruptcy court found in favor of the trustee, but did so chiefly through reliance on Ohio Revised Code Chapter 1309, which codifies Article 9 of the Uniform Commercial Code. The district court affirmed the bankruptcy court on its reasoning.
 
 IV
 
 25
 Whether there was a "transfer of an interest of the debtor in property" is a question of law. Accordingly, this court reviews the matter de novo. Stephens Industries, Inc. v. McClung, 789 F.2d 386, 389 (6th Cir.1986). Because we conclude that FMCC's arguments fail under any one of the three proffered Ohio statutes, we need not and will not decide the issue of which statute applies to the facts of this case.
 
 
 26
 The common law provides that one who pledges property cannot pass to the pledgee a better title or right in the collateral than the pledgor herself has. 83 Ohio Jur.3d Sec. 111 (Secured Transactions). FMCC's primary argument is that when Edney received title to the car, FMCC's loan already encumbered the title. In other words, FMCC retained an interest in the car.
 
 
 27
 In support of its argument that it retained a security interest, FMCC offers Logan v. Chesrown Rapid Credit (In re Weaver), 131 B.R. 804 (S.D.Ohio 1991). In that case, the district court held, under facts similar to the ones before us now, that Chapter 4505 provides an exclusive set of rules and that the common law rule, which operates to bar secured creditors from retaining a security interest, is thus inapplicable. Id. at 808. Both the district court and bankruptcy court in the case at bar rejected the reasoning of Weaver.
 
 
 28
 We also find Weaver unpersuasive. Assuming FMCC indeed retained its security interest, from whom did FMCC receive that interest, if not from Edney? The only other party to the transaction at bar was the dealer. A dealer typically receives title to a vehicle upon purchase of that vehicle from the manufacturer. Accordingly, under Sec. 4505.13(A)(2) of the Title Act, the dealer may retain an interest in the vehicle upon purchase by a customer. However, FMCC has not claimed identity with the dealer, and the dealer did not transfer ownership to FMCC before the sale to Edney. It is thus apparent from the record that FMCC and the dealer occupied discrete roles in the instant transaction--the dealer as the owner/seller, and FMCC as the financier. Therefore, Sec. 4505.13(A)(2) affords FMCC no relief.
 
 
 29
 It follows that FMCC cannot show it received its interest from someone other than the debtor. For FMCC to prevail, then, we must conclude that FMCC's security interest and Edney's encumbered ownership interest arose in the same instant. However, there is no basis in law for the argument that the debtor in this case did not have rights in the collateral before granting the security interest to FMCC.
 
 
 30
 As stated, application of the common law rule would result in the conclusion that Edney's ownership interest necessarily existed before FMCC's security interest. We find no plausible argument that Ohio statutory law alters the common law rule. Chapter 1302 provides that the debtor obtains an ownership interest in the collateral upon its delivery:
 
 
 31
 Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place....
 
 
 32
 Ohio Rev.Code Sec. 1302.42(B). It is true that the delivery of the car and the signing of the security agreement happened on the same day, December 18, 1991. However, the security agreement was signed by Edney, not by FMCC.
 
 
 33
 Under Chapter 1309, the debtor must have rights in the collateral before the creditor's security interest can attach:
 
 
 34
 [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:
 
 
 35
 (1) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ...; and
 
 
 36
 (2) Value has been given; and
 
 
 37
 (3) The debtor has rights in the collateral.
 
 
 38
 Ohio Rev.Code Sec. 1309.14(A). As the bankruptcy judge noted, Sec. 1309.14(A)(3) embraces the common law rule; Edney could not have passed a security interest to FMCC until she received her ownership interest in the car. Accordingly, Chapter 1309 is of no assistance to FMCC.
 
 
 39
 Despite the clarity of the results under Chapters 1302 and 1309, FMCC insists that Chapter 4505, standing alone, dictates the conclusion that Edney's and FMCC's interests arose simultaneously. Section 4505.04 requires a certificate of title as evidence of an ownership interest in a motor vehicle:
 
 
 40
 No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until such person has had issued to him a certificate of title to the motor vehicle....
 
 
 41
 Ohio Rev.Code Sec. 4505.04(A). Section 4505.13, entitled "Record of security interests," requires notation of a lien on the title certificate in order to perfect a security interest in a motor vehicle, unless the security interest is one retained by the dealer. See Ohio Rev.Code Sec. 4505.13.
 
 
 42
 While dicta in Smith v. Nationwide Mutual Insurance Co., 524 N.E.2d 507 (Ohio 1988), and Hughes v. Al Green, Inc., 418 N.E.2d 1355 (Ohio 1981), suggests that Chapter 4505 determines the rights as between these parties, nothing on the face of Secs. 4505.04 or 4505.13 supports FMCC's outlandish contention that its interest arose with Edney's, and FMCC has offered no other Ohio case law that bolsters its argument. Chapter 4505 contemplates the issuance of title and the subsequent notation of liens on the face of the title. See, e.g., Ohio Rev.Code Sec. 4505.13(B). FMCC does not maintain that its interest would have arisen simultaneously with Edney's interest, had FMCC noted its lien the day after issuance of title. It is pure sophistry to suggest that the fortuitous occurrence of issuance then notation on the same day alters the nature or derivation of the parties' interests in the property under Ohio law.
 
 V
 
 43
 Based on the foregoing, we conclude that the issuance of the certificate of title noting FMCC's lien was a "transfer of an interest of the Debtor in property," within the meaning of 11 U.S.C. Sec. 547(b). Because avoidance under Sec. 547(b) was proper, this court AFFIRMS the judgment of the district court in favor of the trustee.
 
 
 
 *
 The Honorable Joseph M. Hood, District Judge for the Eastern District of Kentucky, sitting by designation