Note: We have sua sponte removed this case from the accelerated calendar.
 OPINION
This appeal examines the novel issue of whether, under Ohio law, a pawnshop that takes possession of an automobile as collateral for a loan has a perfected security interest under the Uniform Commercial Code. The issue arose in the context of a forfeiture proceeding after the police seized the automobile, a 1990 Lexus, from the defendant-appellant, Norwood Auto Mart, Inc., d.b.a. Midwest Auto Pawn. The Lexus was ordered forfeited to the state after a hearing conducted without notice to Midwest. Midwest now appeals from the trial court's order denying its Civ.R. 60(B)(5) motion for relief from judgment.
For the reasons that follow, we hold that Midwest possessed a valid security interest in the Lexus, and that the state's failure to provide notice of the hearing violated due process. Further, we hold that the trial court abused its discretion in denying Midwest's motion for relief from judgment. Accordingly, we reverse.
 I.
On June 4, 1997, Curtis Boston delivered to Midwest a 1990 Lexus automobile as security for a loan of $2,000. The owner of the car was Darrick Boston. On July 2, 1997, members of the Hamilton County Sheriff's Department seized the vehicle from Midwest. On July 9, 1997, the state filed a petition for forfeiture under R.C. 2933.43 and 2925.43. The petition alleged that Midwest "may have a security interest in said property."
Midwest received certified mail service of the petition. However, Midwest did not receive certified mail service of the notice of forfeiture hearing. The docket entries do not reflect that service of the notice was ever attempted.
Unbeknownst to Midwest, a forfeiture hearing was held on November 20, 1997. As a result of the hearing, the magistrate found that the state had the best lien on the property and was entitled to forfeiture.
On March 26, 1999, Midwest filed its motion for relief from judgment. In its motion, Midwest argued that it was entitled to relief under Civ.R. 60(B)(5) because it had a meritorious claim to the proceeds of the sale of the Lexus as collateral for its loan, and that the forfeiture hearing violated due process in the absence of notice to the company. Furthermore, the company argued that its motion for relief from judgment was made within a reasonable time because its president had forestalled taking action based upon verbal assurances from RENU officers that Midwest would be compensated for its security interest. According to the affidavit of the president, after no money was forthcoming, he contacted an assistant prosecutor, who advised him to seek legal counsel, which he promptly did.
 II.
In its sole assignment of error, Midwest argues that the trial court erred by denying its Civ.R. 60(B)(5) motion. The company argues that it had a legitimate security interest in the property based upon R.C. 1309.24, which provides, "A security interest in * * * goods * * * may be perfected by the secured party's taking possession of the collateral." RENU argues, on the other hand, that the controlling statute is R.C. 4505.04, the Certificate of Title Act, the relevant portion of which states that "[n]o court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle * * * unless evidenced * * * by a certificate of title." We agree with Midwest.
We note initially that the Ohio Supreme Court has not addressed the issue of whether loans on automobiles pursuant to R.C. Chapter 4727, the Ohio pawnbroker's act, are also to be considered secured transactions under Article 9 of the Uniform Commercial Code. The court has also not addressed questions regarding such loans under Ohio's Certificate of Title Act.
A problem instantly arises in attempting to reconcile the perfection of security interests in automobiles under Article 9 with the certificate of title law and its requirement that all security interests must be noted upon a certificate of title. U.C.C. 9-302, as embodied by R.C. 1309.21(C)(3), expressly defers to state certificate of title laws in those situations where the filing of a financing statement is "otherwise required" by Article 9. However, the same code section makes clear a filing statement is not "otherwise required" when the secured party takes possession of the collateral under R.C. 1309.24. R.C.1309.21(A)(1). Arguably, therefore, the U.C.C. expressly does not defer to state certificate of title laws in those situations, like the present one, in which a creditor takes actual possession of the vehicle and there is no financing statement required.
The authority we have found, furthermore, supports the position that pawn loans are generally to be considered Article 9 secured transactions. In In re Mattheis v. Title Loan Express (1997),214 B.R. 20, U.C.C. Rep. Serv.2d 668, the court, relying upon the U.C.C. provision embodied in R.C. 1309.02(A)(1) (U.C.C. 9-102(A)(1), held that pawn transactions creating consensual liens under the Alabama Pawnshop Act of 1992 were also U.C.C. Article 9 transactions. In addition its reliance on the statutory language that Article 9 was meant to apply to "any transaction, regardless of its form," the court in Mattheis was persuaded by the absence of an express exclusion of pawn transactions under Article 9 (U.C.C. 9-104), as well as the general provision of the U.C.C. providing that it was intended as a "unified coverage of its subject matter" and that no part of the U.C.C. was to be impliedly repealed. Id. at 25-27. See R.C. 1301.04 (U.C.C. 1-104).
After holding that the pawn transactions were controlled by Article 9, the court in Mattheis explained this to mean that, in the case of vehicles, perfection of a security interest in a pledged automobile could either by actual possession pursuant to the Alabama equivalent of R.C. 1309.24, orby use of the title under Alabama's certificate of title act. Id. at 27. With respect to the former, the court ruled that in a traditional pawn transaction — one in which the pawnbroker takes possession of the vehicle pursuant to a written agreement and the debtor receives the loans proceeds — the security interest is perfected under U.C.C. 9-305 (R.C. 1309.24) against third-party claimants. As stated by the court, possession for purposes of the statute "normally takes place the day the debtor pawns the goods. A pawnbroker can attain perfection in a debtor's certificate of title, his spare car keys and, indeed, the car itself, if the debtor turns these items over to the pawnbroker." Id. The court did point out, however, that if the pawnbroker takes only the car's title, allowing the debtor to maintain possession of the vehicle, the pawnbroker has only an "attached nonpossessory security interest" that is enforceable against the debtor, but is not perfected against other claimants. In such case, U.C.C.7-9-302(3)(C) (R.C. 1309.21[C][3]) requires that the pawnbroker, like any other creditor, must deliver an executed application for a title showing it as a lienholder on the vehicle pursuant to the applicable certificate of title act.
We find persuasive the analysis of the court inMattheis. We note further that the Ohio Supreme Court has, in other contexts, clearly limited the scope of the Ohio Certificate of Title Act in favor of the Uniform Commercial Code. For example, in Hughes v. Al Green, Inc. (1981), 65 Ohio St.2d 110,418 N.E.2d 1355, the court ruled that the provision of the U.C.C. set forth in R.C. 1302.53 regarding the rules for contractual risk of loss takes precedence over R.C. 4505.04. According to the court, the Certificate of Title Act was "not adopted to clarify contractual rights and duties." Id. at 115, 418 N.E.2d at 1356. Rather, the Act was "intended to apply to litigation where the parties were rival claimants to title, i.e., ownership of the automobile; to contests between the alleged owner and lien claimants; to litigation between the owner holding the valid certificate of title and one holding [invalid] certificates of title; and to similar situations." Id. at 115-116, quoting GroganChrysler-Plymouth, Inc. v. Gottfried (1978), 59 Ohio App.2d 91,94-95, 392 N.E.2d 1283.
Similarly, in Smith v. Nationwide Mut. Ins. Co. (1988), 37 Ohio St.3d 150,524 N.E.2d 507, the court held that the U.C.C. provision embodied in R.C. 1302.42(B) (U.C.C. 2-401) regarding when title passes for insurance purposes applies notwithstanding an apparent conflict with R.C. 4505.04. The court rejected the argument that the Certificate of Title Act should control because it specifically deals with motor vehicles and the Uniform Commercial Code generally deals with the ownership of goods. Rather, the court, citing Hughes, stated that the Certificate of Title Act was "irrelevant to all issues of ownership except those regarding the importation of vehicles, rights as between lienholders, rights of bona-fide purchasers, and instruments evidencing title and ownership." Id. at 152-153,524 N.E.2d at 509. Furthermore, the court stated that, except in these situations, "motor vehicle ownership rights will be determined by the Uniform Commercial Code." Id. at 153.
Under the thesis of Hughes and Smith, the U.C.C. provisions regarding secured transactions would appear to take precedence over the Certificate of Title Act except in litigation involving competing lienholders, rivals to title, and other similar situations. The question becomes, then, whether, at the time at which the issue of notice arose, Midwest and RENU were asserting interests that the Certificate of Title Act was supposed to exclusively control.
Important to our analysis is the time with which we are concerned. The issue of notice arose between the time of the petition for forfeiture and the time of the forfeiture hearing. During this period, despite its argument to the contrary, the state was not a lienholder.[1] Rather, it was merely in possession of the Lexus after its seizure. Nor were Midwest and RENU rivals to the vehicle's title since Midwest did not claim ownership, but only a secured interest in the vehicle as collateral. The state's argument that Midwest has become a competing lienholder because it is now competing with RENU's rights obtained as a result of the order of forfeiture is, in this regard, inapposite since it focuses on the status of the partiesafter the forfeiture hearing for the purpose of determining whether Midwest was entitled to notice before the hearing.
In sum, the present case does not, in our view, come under the type of litigation that the Ohio Supreme Court has indicated the Certificate of Title Act was meant to control to the exclusion of the Uniform Commercial Code. Certainly the state cannot argue that RENU relied in any sense upon the certificate of title when the Lexus was seized. Although the question is admittedly close, we conclude that, in this rather unique situation, perfection by possession under R.C. 1309.24 was sufficient to protect Midwest's security interest against RENU as a third party seeking forfeiture of the vehicle under R.C. 2943.33 [2933.43].
 III.
The forfeiture statute specifically provides that no bona-fide security interest shall be forfeited if the holder of the interest establishes a lack of knowledge that the property was used, or likely to be used, in a crime. R.C. 2933.43(C). If the holder satisfies this requirement, then the statute states that its interest "shall be preserved by the court," by either an order that the agency reimburse the interest holder for the amount of the interest, or an order that the holder be reimbursed from the proceeds of the sale. Id.
Significantly, the statute requires, prior to the forfeiture hearing, that the state conduct a search of the "appropriate public records" to determine if any person has a security interest in the property. Id. The statute then requires the state to give notice of the forfeiture proceedings by personal service or certified mail to any person with a security interest in the property. The notice is expressly required to "list the time, date, and place of the hearing." Id. The notice requirements of the statute are mandatory and require strict compliance. Ohio Dept. of Liquor Control v. Sons of Italy Lodge0917 (1992), 65 Ohio St.3d 532, 605 N.E.2d 368.
As we have noted, although Midwest was served with a copy of the forfeiture petition, it was not sent notice of the hearing. The state's failure to serve Midwest with notice of the hearing is conspicuous in light of the fact that the state had previously noted Midwest's potential security interest in the Lexus in the forfeiture petition. Certainly the spirit of the statute is that the state make a good faith, conscientious effort to appraise itself of any outstanding security interests and send the interest holder notice. The lack of notice of the hearing to Midwest violated the statute and also constituted a violation of due process. See Asher Investments, Inc. v. Cincinnati (1997),122 Ohio App.3d 126, 701 N.E.2d 400; State v. Sutherlin (1996),111 Ohio App.3d 287, 676 N.E.2d 127.
We hold, furthermore, that Midwest did not sleep on its rights, as found by the trial court. There was no evidence to contradict the affidavit of the company's president regarding the assurances received from RENU that the company would be reimbursed for its security interest after the order of forfeiture. Based upon the affidavit, it appears that the company acted promptly when it became clear that such assurances were false. As this court has recognized in a similar context, a party lulled into a false sense of security by another party should not be time-barred from seeking relief from the unjust operation of a judgment. SeeMarkese v. Ellis (1997), 11 Ohio App.2d 160, 163, 229 N.E.2d 70,72.
Accordingly, we reverse the order of the trial court denying Midwest's motion for relief from judgment, vacate the trial court's judgment, and remand this matter to the trial court for proceedings consistent with this Opinion.
Judgment reversed and cause remanded.
 Doan, P.J., and Shannon, J., concur.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Opinion.
[1] We note that the magistrate in his decision determined that RENU had "a good and valid first and best lien" upon the Lexus. This language appears to be misplaced given that RENU was seeking title and possession. The order of the trial court adopting the magistrate's decision correctly refers only to forfeiture, ownership, and title.