OPINION.
The defendant-appellant, Mike Albert Leasing, Inc., appeals from the order of the trial court granting the plaintiffs-appellees, Saturn of Kings Automall, Inc., and Cronin Motor Company, LLC, summary judgment in an action for replevin and damages. The action concerned six automobiles that Gallatin Auto Sales contracted to buy from Kings and Cronin. Gallatin did not make payment on any of the automobiles, but was allowed to take possession without receiving title. Gallatin then sold three of the untitled vehicles to Mike Albert for a total of $47,000.[1]
By agreement of the parties, the vehicles were sold and their proceeds put into escrow. In its sole assignment of error, Mike Albert argues that the trial court erred in granting summary judgment to the dealers based upon the Ohio Certificate of Title Act, specifically R.C. Chapter 4504. The Act specifically provides that a person does not acquire any rights in a vehicle until that person has obtained a certificate of title. According to Mike Albert, the trial court should have granted its own motion for summary judgment based upon R.C. 1302.44. That statute, adopted from the Uniform Commercial Code, provides that an entrustment of goods to a merchant by the owner gives the merchant power to transfer all the rights of the owner.
For the reasons that follow, we find the assignment to be well taken and therefore reverse the judgment of the trial court.
A. Analysis
Initially, we note that this is not the first case that has required us to examine the interplay between the Certificate of Title Act and the Uniform Commercial Code. As we observed in Inre 1990 Lexus v. Boston (Mar. 31, 2000), Hamilton App. No. C-990403, the Ohio Supreme Court has "clearly limited the scope of the Ohio Certificate of Title Act in favor of the Uniform Commercial Code." For example, in Hughes v. Al Green, Inc.
(1981), 65 Ohio St.2d 110, 418 N.E.2d 1355, the court held that the U.C.C. provision set forth in R.C. 1302.53 regarding the rules for contractual risk of loss takes precedence over R.C. 4505.04. According to the court, the Certificate of Title Act was "not adopted to clarify contractual rights and duties." Id. at 115,418 N.E.2d at 1356. Rather, the Act was "intended to apply to litigation where the parties were rival claimants to title, i.e., ownership of the automobile; to contests between the alleged owner and lien claimants; to litigation between the owner holding the valid certificate of title and one holding [invalid] certificates of title; and to similar situations." Id. at 115-116, quotingGrogan Chrysler-Plymouth, Inc. v. Gottfried (1978), 59 Ohio App.2d 91,94-95, 392 N.E.2d 1283.
Similarly, in Smith v. Nationwide Mut. Ins. Co. (1988),37 Ohio St.3d 150, 524 N.E.2d 507, the court held that the U.C.C. provision embodied in R.C. 1302.42(B) (U.C.C. 2-401) regarding when title passes for insurance purposes applies notwithstanding an apparent conflict with R.C. 4505.04. The court rejected the argument that the Certificate of Title Act should control because it specifically deals with motor vehicles while the Uniform Commercial Code generally deals with the ownership of goods. Rather, the court, citing Hughes, stated that the Certificate of Title Act was "irrelevant to all issues of ownership except those regarding the importation of vehicles, rights as between lienholders, rights of bona-fide purchasers, and instruments evidencing title and ownership." Id. at 152-153,524 N.E.2d at 509. Furthermore, the court stated that, except in these situations, "motor vehicle rights will be determined by the Uniform Commercial Code." Id. at 153.
Applying Hughes and Smith in Boston, we held that a pawnshop was entitled to perfect a security interest in an automobile by taking possession of the collateral under R.C. 1309.24, notwithstanding the fact that the security interest was not evidenced on the title.
Mike Albert argues that this is another case, similar toHughes, Smith and Boston, in which the scope of the Certificate of Title Act should be limited in favor of the Uniform Commercial Code. To make this determination, it is necessary first to examine the competing policy and interests underlying the specific U.C.C. provisions at issue, as well as their operation upon the facts of this case.
1. Bona Fide Purchasers Under the Uniform Commercial Code
Initially, for the sake of clarification, we note that there is no evidence of record that the purchases of the automobiles from Kings and Cronin were secured transactions. The motions for summary judgment were based upon a stipulated record, and the one-page purchase contracts that are part of that stipulated record do not purport to create a security interest in favor of the dealers. Nor in their arguments to this court have Kings and Cronin taken the position that they were secured parties when Gallatin sold the automobiles to Mike Albert.
We raise this point for two reasons: first, to demonstrate that this is not a case involving R.C. 1309.26 (U.C.C. 9-307), which is the Article 9 analogue of R.C. 1309.24 (U.C.C. 2-403); second, to demonstrate the paramount protection the U.C.C. provides buyers in the ordinary course of business. R.C. 1309.26
specifically provides that a buyer in the ordinary course of business "takes free of security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." This provision is an exception to the general rule that a security interest is effective against purchasers of the collateral. See R.C. 1309.12 (U.C.C. 9-201). The intent of the drafters of the U.C.C. was to subordinate the interests of the lender holding a security interest in a merchant's inventory to those of a buyer who purchases out of that inventory. In such case, in order to facilitate commerce, the U.C.C. favors a buyer in the ordinary course of business, provided that the buyer acts in good faith and without knowledge that there is anything in the security agreement that would prohibit or restrain the sale of the inventoried item. See White Summers, Uniform Commercial Code (3 Ed. 1988) 1163-1177, Sections 24-12 to 24-16. As stated by one court in a case involving a car dealership,
 The [U.C.C.] in this circumstance expects the secured party to look to the seller for his remedy. The buyer, on the other hand, is protected since he is permitted to assume that the seller did as he was supposed to do, that is, pay the floor planner when the car is sold. The "buyer in the ordinary course of business" is not expected to foresee and guard against the risk of his seller selling out of trust. If, however, the buyer cannot qualify as a "buyer in the ordinary course of business," the [U.C.C.] dictates that as between the buyer and secured creditor, the secured creditor shall prevail.
 Sherrock v. Commercial Credit Corporation (Del.Super.Ct. 1971), 277 A.2d 708.
R.C. 1302.24 is the U.C.C. Article Two analogue of R.C.1309.36. R.C. 1302.24 is intended for those situations where a party, other than a secured party, entrusts goods to a merchant who deals in goods of that kind. Again, the purpose of the statute is to protect persons who buy in ordinary course out of inventory, and who are justified in believing that they are receiving good title. R.C. 1309.24 provides that the owner of goods who entrusts his goods to a merchant who deals in goods of that kind bears the risk that a buyer will come along and buy his goods from the merchant, thus cutting off the owner's rights.
As noted by White Summers, the concern of R.C. 1309.24 is largely based upon appearances. "An individual buying a product from an apparent dealer in such goods expects to get good title. This expectation facilitates exchange. One cannot ascertain his seller's title without slowing commerce. One expects to get good title when buying a shiny new Vega from a General Motors dealer." White Summers, supra, at 176, Section 3-11.
The dealers argue that, even if the U.C.C. applies in this case, there was no entrustment. The U.C.C., however, defines the term "entrusting" broadly:
 "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.
R.C. 1302.44(C).
The dealers base their argument that there was no entrustment upon the fact that Gallatin "was in no way serving as a middleman" for either, and that neither had "any knowledge that Gallatin intended to subsequently sell [the] vehicles to Mike Albert." Neither argument, however, finds any support in the language of R.C. 1302.44. The statute requires only that delivery be to a "merchant who deals in goods of that kind" — not necessarily a middleman — and does not require that the entrustor be aware of the merchant's intent with respect to the goods. In this sense, it should be emphasized that "entrusting," as used in the statute, does not mean a placing of confidence in the merchant; rather, it refers only to acquiescence in the merchant's taking possession of the goods. Here, based upon the undisputed record, the dealers acquiesced in Gallatin's taking delivery and possession of the automobiles.
The dealers also argue that there was no entrustment because Mike Albert "significantly contributed to its own loss by paying Gallatin in full for the vehicles without even seeing thecertificate of title." (Emphasis in original.) The dealers contend that Mike Albert was, in this regard, reckless, whereas they, the dealers, acted prudently by maintaining possession of the vehicles' certificates of title pending payment.
The dealers' argument in this regard is arguably contrary to the stipulation that Mike Albert was a buyer in the ordinary course of business. As part of the stipulated record, the parties agreed that "Gallatin is a merchant who regularly deals in the purchase and resale of motor vehicles." Further, the parties stipulated that "Mike Albert, in the ordinary course of business, purchased all three of the vehicles at issue from Gallatin for the sum of $47, 000.00." (Emphasis supplied.) With regard to the latter stipulation, the Uniform Commercial Code defines a buyer in the ordinary course of business as "a person who, in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods, buys in ordinary course from a person in the business of selling goods of that kind * * *." R.C. 1301.01 (I) (U.C.C. 1-201). "Good faith" is defined, generally, as honesty in fact. R.C. 1301.01(S). In the case of a merchant, however, good faith means not only honesty in fact, but, also, "the observance of reasonable commercial standards of fair dealing in the trade." R.C. 1302.01(2). If the dealers' stipulation is construed, therefore, as a stipulation that Mike Albert was a buyer in the ordinary course of business under the U.C.C., then the dealers, in effect, conceded that Mike Albert had observed reasonable commercial standards notwithstanding its failure to require Gallatin to produce title to the vehicles.
Assuming, however, that the stipulation was not intended to encompass the U.C.C.'s definition of a buyer in the ordinary course, we agree with the dealers' argument that a merchant-buyer should be held to a higher standard. In Sherrock, for example, the court held that a merchant-buyer is "assumed to know the customs of the trade" and is expected, therefore, to take steps to protect his or her interest beyond that of an average consumer.Sherrock, supra, at 713. In another case very much on point, the court in Matteck v. Malofsky (1969), 42 Wis.2d 16, 165 N.W.2d 406, held that a used-automobile dealer who bought a car from another used-car dealer without obtaining or inquiring about the certificate of title did not qualify as a "buyer in the ordinary course of business" under the U.C.C. as a matter of law. In the analysis of the court,
 [a] merchant may be a buyer in the ordinary course under [U.C.C. 2-403] from another merchant if he meets four elements: (1) Be honest in fact, (2) be without knowledge of any defects of title in the goods, (3) pay value, and (4) observe reasonable commercial standards. In the observance of the reasonable commercial standards, however, a merchant is chargeable with the knowledge or skill of a merchant.
 We think [the purchasing used-car dealer] was not the buyer in the ordinary course of business within the meaning of [U.C.C. 2-403]. [Because] the delivery of the automobile to [the selling used-car dealer by the owner] constituted an entrustment, [the selling used-car dealer] could by subsequent sale pass title to a buyer in the ordinary course of business. However, [the purchasing used-car dealer] as a merchant was not a buyer in the ordinary course of business because he was chargeable with the knowledge [of] the registration law * * *. [The purchasing used-car dealer] should have known the used automobile had a certificate of title outstanding and that the [selling used-car dealer] was required to give him such certification of title. Under the standards set forth in [U.C.C. 2-403], applicable to transactions between merchants, [the purchasing used-car dealer] is chargeable with this knowledge and his failure to procure a certificate of title or some evidence of title was unreasonable as a matter of law.
 Matteck, supra, at 19, 165 N.W.2d at 407.
As noted by White Summers, whether a person qualifies as a buyer in the ordinary course of business has been regarded as a mixed question of law and fact. White Summers, supra, at 178, Section 3-11. Noteworthy, therefore, is the Matteck court's conclusion that the purchasing used-car dealer's failure to ask for proof of title disqualified him as a buyer in the ordinary course as a matter of law.
In sum, several points are clear. First, the U.C.C. strongly favors and protects a buyer in the ordinary course of business. Second, upon the undisputed facts of this case, there was, as a matter of law, an entrustment under R.C. 1302.44(C) when Kings and Cronin allowed Gallatin, a merchant in goods of the same kind, to take possession of the vehicles. Third, the operation of R.C.1309.44 depends upon whether Mike Albert was a "buyer in the ordinary course of business" under the U.C.C. This issue turns upon the construction given the parties' stipulation (specifically, stipulation of fact number six) as it affects the question whether Mike Albert observed reasonable commercial standards when it paid Gallatin for the vehicles without first requiring proof of title. If Mike Albert did not observe reasonable commercial standards, then the company did not act in good faith as defined by the U.C.C. [R.C. 1302.01(2)], and did not qualify as a buyer in the ordinary course of business.
2. The Certificate of Title Act
The Certificate of Title Act states that "no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle * * * unless evidenced * * * by a certificate of title." R.C. 4505.04. However, as we noted earlier, the Ohio Supreme Court has expressly limited the scope of the Act in favor of the U.C.C., holding that automobiles are goods just like any other, and that, except in certain situations, "motor vehicle ownership rights will be determined by the Uniform Commercial Code." Smith v. Nationwide Mut. Ins. Co., supra, at 150, 152-153,524 N.E.2d at 509.
The result is that application of the Certificate of Title Act to a given question of automobile ownership is no longer a foregone conclusion. As the court has recognized in Hughes andSmith, the U.C.C. is better equipped to determine contractual rights and duties, as well as risk of loss, in the marketplace.Hughes, supra, at 116, 418 N.E.2d at 1358; Smith, supra, at 153,524 N.E.2d at 509. The Certificate of Title Act, on the other hand, is designed "to prevent the importation of stolen motor vehicles, to protect Ohio bona-fide purchasers against thieves andwrongdoers, and to create an instrument evidencing title to, and ownership of, motor vehicles." Hughes at 115, 418 N.E.2d at 1358
(emphasis supplied).
As Mike Albert points out, this court has once before held that the entrustment provision of the U.C.C., R.C. 1302.44 (U.C.C. 2-403), applies notwithstanding a contrary result under the Certificate of Title Act. In Fuqua Homes, Inc. v. Evanston Bldg. Loan Co. (1977), 52 Ohio App.2d 399, 370 N.E.2d 780, we held that the manufacturer of a mobile home who retained the certificate of origin issued under R.C. Chapter 4505, but who entrusted the possession of the home to a dealer in such goods, gave the dealer power under R.C. 1302.44(B) to transfer ownership rights to a buyer in the ordinary course of business. In reaching this conclusion, we rejected the argument that the Certificate of Title Act should prevail, stating that the Act "grants a unique status to a certificate of origin (or a certificate of title), but the rights it creates in a holder of such a certificate are not absolute. A holder does not prevail against all the world under any and all circumstances." Id. at 402, 370 N.E.2d at 782. We stated further, "R.C. Chapter 4505 states how ownership and interest in motor vehicles are evidenced, recognized, recorded, and normally transferred, but it does not set forth the only provisions whereby title is acquired in the first instance to the exclusion of all other law." Id. at 403, 370 N.E.2d at 782.
B. Conclusion
Based upon Hughes and Smith, and in accordance with our decision in Fuqua, we hold that the trial court erred in determining that ownership of the vehicles in question was controlled by the Certificate of Title Act, R.C. Chapter 4505. Rather, the trial court should have determined ownership of the vehicles under the U.C.C, specifically R.C. 1302.44(B).
Under R.C. 1302.44(B), based upon the undisputed record, Kings and Cronin entrusted the vehicles to Gallatin. The only genuine issue of material fact with respect to the application of R.C.1302.44 is whether Mike Albert qualified as a buyer in the ordinary course of business — in other words, as a merchant in goods of the same kind that observed reasonable commercial standards when it purchased the vehicles without requiring proof of title. Should the trial court choose to construe the parties' stipulation that Mike Albert purchased the vehicles "in the ordinary course of business" as a stipulation that Mike Albert acted in good faith and observed reasonable commercial standards, then Mike Albert is entitled to judgment as a matter of law. If not, the trial court must either make a determination on this issue as the record presently exists, allow the parties to expand upon the stipulated record, or proceed to trial.
We hold, therefore, that the trial court erred in granting summary judgment to Kings and Cronin. Absent a determination by the trial court as to the construction of the parties' stipulation, we cannot say that the trial court erred in denying summary judgment to Mike Albert. Accordingly, the judgment of the trial court is reversed and this matter remanded for further proceedings consistent with this Opinion.
____________________________ GORMAN, Presiding Judge
SUNDERMANN and WINKLER, JJ., concur.
[1] After selling the vehicles to Mike Albert, Gallatin filed for bankruptcy.