The STATE of Ohio, Appellee,

v.

SUTHERLIN, Appellant.

[Cite as *State v. Sutherlin* (1996), 111 Ohio App.3d 287.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950770.

Decided March 20, 1996.

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Gordon M. Strauss*, Assistant Prosecuting Attorney, for appellee.

*Reuben Sutherlin, pro se.*

SHANNON, Judge.

This is an appeal from an order of the Hamilton County Court of Common Pleas decreeing that certain property seized from the appellant, Reuben Sutherlin, be forfeited to the Cincinnati Police Division and the Hamilton County Prosecuting Attorney. It has been brought by Sutherlin, currently confined in an Ohio penal institution, *pro se.*

Most of the facts involved in the controversy are undisputed. On November 30, 1995, officers of the Cincinnati Police Division executed a warrant to search residential premises at 885 Ezzard Charles Drive, Cincinnati, Ohio. Sutherlin does not contest the validity of the warrant, nor does he deny that the premises were occupied by him and a female identified as Janice Deramus, who was characterized as Sutherlin's common-law wife. The actual lessee of the quarters was Gregory Patterson.

During the search, the officers seized some $2,600 in United States currency, including a marked $20 bill which had been used by the police in an earlier controlled purchase of powdered cocaine from Sutherlin, approximately eighteen grams of cocaine in powder form, miscellaneous packing materials, a substance used to cut the drug, a digital scale, a cellular telephone and a police radio scanner. The officers also found and seized certain items of jewelry and electronic devices, and they also took, from Sutherlin's person, keys to the locks

of a Mercedes Benz automobile which was parked in a lot adjacent to the apartment.[1]

Immediately after the officers conducting the search placed Sutherlin and Deramus under arrest, they were advised of their constitutional rights before being questioned. Deramus told the officers that Sutherlin "was a drug dealer and that he had a safe hidden at the residence of Mr. Patterson in the Mount Airy apartments." She informed the police that the safe contained money and drugs which "belonged to Mr. Patterson and her husband."

On the strength of those statements, the officers contacted fellow officers operating in the area within which the Mount Airy Apartments were located. Those officers reached Patterson at his place of employment, a local radio station, identified themselves and sought his consent as lessee of the apartment to search that particular unit. Patterson signed a consent form and supplied the officers with keys to the apartment. The consent form authorized the police "to conduct a search" of the unit and "to take from my residence and storage area" any "property which is contraband or may be used as evidence in a criminal or civil proceeding." When they opened the door to the apartment, they found it to be unoccupied and without electric service. Patterson had told the officers that there was no safe in the apartment but that if they found one it was not his, and that they "could have it and do with it what [they] wanted."

The officers did recover a safe within one of the rooms in Patterson's apartment and transported it to a district station, where it was opened. They removed from it $18,860 in United States currency, a .38–caliber revolver and business cards in the name of Gregory Patterson with "amounts written on the back of them." When the police informed Sutherlin of the seizure of the safe and its contents he said "he knew nothing about it nor the combination."[2] Because neither Patterson, Sutherlin nor any other person involved claimed any interest in the safe, the authorities treated it and the items taken from it as abandoned property.

Ultimately, Sutherlin was charged with offenses not specified in this record in a multicount indictment and pleaded guilty to counts one and four.[3]

---

1. The police also seized nineteen "miniature sticks of dynamite * * * hand-made for the street." Those items are not part of the forfeiture action.

2. The safe was examined for the existence of fingerprints, but none that were identifiable were found.

3. Appellant has appended to his brief, submitted *pro se*, what appear to be extracts from proceedings, before the same jurist who presided over the hearing of the petition for forfeiture, conducted February 2, 1995. On that date, Sutherlin entered a plea of guilty, while represented by legal counsel, to counts 1 and 4 of the indictment, *viz.*, offenses of aggravated

On January 4, 1995, the state filed its petition pursuant to R.C. 2933.43(C) for the forfeiture of the seized property *in toto* as being contraband, pursuant to R.C. 2933.43(A), owned by Sutherlin.

On January 30, 1995, Sutherlin through counsel filed his answer to the petition denying, particularly, the state's allegation that all the property was seized at the Ezzard Charles Drive location and that the property was contraband. In response to interrogatories, Sutherlin stated the currency in the safe represented his savings from wages, a retirement pension and an award for "workman's compensation."

At the hearing of the petition for forfeiture, Sutherlin was represented by different legal counsel, who, at the conclusion of the state's case-in-chief, stated:

"Judge, Mr. Sutherlin is asking for the return most specifically of the cash found in the safe. The items found in the apartment where he and his wife lived, we are not contending should be returned. Mr. Sutherlin was 39 years old at the time of this seizure. He claims that the money found in the safe belonged to him and this was accumulated over his lifetime and that he had saved it."

Sutherlin's counsel had indicated to the court at the commencement of the hearing that she would "deal" with Sutherlin's antecedent "Motion Alleging Unlawful Seizure," which sought an order finding the safe and contents to have been seized unlawfully, in cross-examination of the state's witnesses. Acting apparently on that representation, counsel neither adduced nor proffered evidence or testimony beyond that adduced in cross-examination.

The court entered its judgment in favor of the state on September 20, 1995, finding *inter alia* that the petition had been brought "pursuant to R.C. 2925.43," that notice of the action was properly given "pursuant to R.C. 2925.43(E)(2)," and that the property seized "is property described in R.C. 2925.43(A)," and proceeded to divide it between the police division and the prosecutor.

In its colloquy with counsel in the course of their concluding arguments, the court commented on the state's demand for complete forfeiture and Sutherlin's counsel's response that the money in the safe belonged to Sutherlin:

"THE COURT: You know, one of the problems in this case is Mr. Sutherlin came in here and this Court reluctantly did it and only at the urging of the State and we waived the fines because he signed—we waived thousands of dollars worth of fines which the Court didn't want to do. I only did it because the State of Ohio urged me to do it and I did not want to do it because that money should have been applied to the fines. We didn't do that. On one hand for purposes of

---

trafficking in drugs and possession of a weapon while under disability, for which he was sentenced to a minimum term of three years in prison.

Mr. Sutherlin paying the fines you have him saying that he's indigent and now he wants the $18,000 back which sounds somewhat inconsistent to me. I am sorry. Go ahead."

The first of Sutherlin's seven assignments of error is that the court denied his rights to due process of law when it "modified" the forfeiture hearing from one conducted under R.C. 2933.43(C), as pleaded, to one under R.C. 2925.43(E)(2), as set forth in the court's entry of forfeiture.

The appellee responds to this assignment by confessing its own error in assisting the court in the preparation of the entry of forfeiture, when the assistant prosecuting attorney who presented the case for the state improvidently inserted an incorrect reference to a statute not applicable in this case. The state characterizes this inadvertence as a "scrivener's error," one which could be eliminated by the trial court by an order making the record "speak the truth." The prosecutor, however, decided not to seek such an order during the pendency of this appeal because "it is not clear that the trial court would retain jurisdiction to amend its order * * * while the case is on appeal." We find it unnecessary to answer that question because the record demonstrates conclusively that the case from beginning to end was predicated upon R.C. 2933.43 to the knowledge of Sutherlin and his several attorneys. The obviously improvident insertion of an inapposite statute, therefore, resulted in no palpable prejudice to Sutherlin. For that reason, the first assignment is overruled.

The second assignment raises the issue which we consider to be the one critical in the case. Sutherlin submits:

"A trial court commits prejudicial error when it holds a hearing for forfeiture of property outside the presence of the property owner, violates due process as afforded in Ohio Constitution Article I, Section 10 and Section 16 and the Fourteenth Amendment of the Constitution of the United States."

Sutherlin's argument is that when the trial court conducted the forfeiture hearing on September 19, 1995, without his presence, he was denied due process of law because he was prevented from posing objections to procedure and from presenting evidence that the property seized at Mount Airy Apartments was not, by law, contraband subject to seizure.

In *State v. Casalicchio* (1991), 58 Ohio St.3d 178, 569 N.E.2d 916, syllabus, the Ohio Supreme Court ruled:

"Where property is ruled contraband pursuant to R.C. 2933.42(B), forfeiture of that property pursuant to R.C. 2933.43 constitutes a separate criminal penalty in addition to the penalty the defendant faces for conviction of the underlying felony."

As Justice Wright noted in his lead opinion, Casalicchio challenged the scope of Ohio's forfeiture statutes on due process grounds, questioning specifically whether the automobile he was driving when arrested, which contained marijuana and cocaine, was subject to forfeiture because it bore no substantial relationship to the crimes of which he was found to be guilty.[4] The court of appeals reversed the order of forfeiture, holding that because the automobile was not used in the commission of the offenses, it was not subject to forfeiture.

In the course of his dissertation, Justice Wright addressed Casalicchio's challenge to the civil nature of the forfeiture proceedings, noting that Ohio has generally considered forfeiture proceedings to be civil actions. The two paragraphs of the syllabus of *Sensenbrenner v. Crosby* (1974), 37 Ohio St.2d 43, 66 O.O.2d 106, 306 N.E.2d 413, are:

"1. The forfeiture provision of R.C. 3719.47 creates a civil cause of action.

"2. The Ohio Rules of Civil Procedure apply to, and govern, the enforcement of the forfeiture provision of R.C. 3719.47."

However, after a detailed analysis of cases emanating chiefly from federal courts, the *Casalicchio* majority held:

"Forfeiture of R.C. 2933.42(B) contraband pursuant to R.C. 2933.43, however, requires a conviction for a felony prior to forfeiture and insulates innocent lien holders and property owners from loss. R.C. 2933.43(C). Both of these characteristics strongly suggest that the forfeiture in the context of this case is intended as a penalty for the underlying felony. See [*United States v.*] *Seifuddin, supra,* [820 F.2d 1074] at 1078 [ (1987) ]. Thus, we must hold that *where property is ruled contraband pursuant to R.C. 2933.42(B), forfeiture of that property pursuant to R.C. 2933.43 constitutes a separate criminal penalty* in addition to the penalty the defendant faces for conviction of the underlying felony." (Emphasis added.) *Casalicchio,* 58 Ohio St.3d at 182, 569 N.E.2d at 921.

Some two and one-half years after the Ohio Supreme Court decided *Casalicchio,* the Court of Appeals for Auglaize County decided *In re Forfeiture of One 1986 Buick Somerset Auto.* (1993), 91 Ohio App.3d 558, 632 N.E.2d 1351. There, the petition to forfeit the automobile pursuant to R.C. 2933.43 preceded the plea of guilty of its owner to possession while under disability of a weapon which police recovered in a consensual search of the car. The court of appeals applied *Casalicchio* in resolving the question whether the owner of the Buick had a right

4. Casalicchio pleaded no contest to two felony offenses, possession of a controlled substance, cocaine, and possession of a criminal tool, a plastic tube used to inhale cocaine, and was sentenced therefor three days prior to the filing of the state's petition for forfeiture of his automobile pursuant to R.C. 2933.43.

to attend the hearing on the petition for forfeiture [5] because the proceeding was criminal in nature and held:

"In light of the unequivocal holding of the Supreme Court in *Casalicchio, supra,* that forfeiture of property pursuant to R.C. 2933.43 constitutes a criminal penalty, and considering the Crim.R. 43 requirement that a defendant be present for the imposition of sentence, we are compelled to conclude that appellant had the right to attend the forfeiture hearing and that the trial court in this case should have granted appellant's motion to be present." 91 Ohio App.3d at 563–564, 632 N.E.2d at 1354.

In our case the record does not disclose a request or motion to be present at the hearing on September 19, 1995, and Sutherlin was represented by counsel. Nevertheless, it is apparent from the record that Sutherlin intended to assert that property seized from the Mount Airy Apartments was not contraband and not subject to forfeiture.

■ We are convinced that Crim.R. 43(A) [6] provides a defendant in a criminal prosecution with an absolute right, subject to the provisions of Crim.R. 43(B),[7] to be present at every stage of the trial, including the imposition of sentence. That right is so fundamental that we are compelled to hold that it cannot be removed except by a voluntary, intelligent and express waiver.

■ While Sutherlin's counsel attempted to present Sutherlin's case upon cross-examination of state's witnesses, Sutherlin's own voice was not heard. Because *Casalicchio* stands for the proposition that forfeiture of property constitutes a separate criminal penalty in addition to the penalty faced for the conviction of an underlying felony, we hold that Sutherlin had a right to be present during the forfeiture proceeding and that, upon the record, Sutherlin had not expressly waived that right.

---

5. The owner had filed with the trial court his "request" to be present at the hearing on March 2, 1993. He was then confined in a penal institution. On March 5, 1993, the day of the hearing, that request was "overruled" by the trial court.

6. Crim.R. 43(A) provides:
   "The defendant shall be present at the arraignment and every stage of the trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence * * *."

7. Crim.R. 43(B) provides:
   "Defendant excluded because of disruptive conduct. Where a defendant's conduct in the courtroom is so disruptive that the hearing or trial cannot reasonably be conducted with his continued presence, the hearing or trial may proceed in his absence, and judgment and sentence may be pronounced as if he were present. Where the court determines that it may be essential to the preservation of the constitutional rights of the defendant, it may take such steps as are required for the communication of the courtroom proceedings to the defendant."

For the reasons given, Sutherlin was deprived of due process of law when the court proceeded to forfeit his property outside his presence. Therefore, his second assignment of error is well taken.

■ The third assignment raises the question whether the property at the Mount Airy Apartments was seized illegally because there was not a valid warrant to search those premises. It is without merit because the record demonstrates that the lessee, Gregory Patterson, gave an intelligent, voluntary consent to search them.

■ The fourth assignment, that the forfeiture hearing was conducted beyond the statutory limits provided by R.C. 2933.43(C), is not well taken because the record establishes that the hearing on the state's petition was set within the forty-five-day requirement imposed by R.C. 2933.43(C) but was continued from time to time upon Sutherlin's requests through counsel.

The fifth assignment of error is:

"A trial counsel's performance is deficient for failure to secure the attendance of an accused during a forfeiture hearing that is criminal in nature when the procedures acquiesced are substantially modified on the day of the hearing, without prior notice, and does not make request for continuance to defend property against the new forfeiture procedures. Ohio Constitution Article I, Section 10; United States Constitution Sixth and Fourteenth Amendments."

To the degree the fifth assignment subsumes the issue raised in the second, *viz.*, error embodied in a hearing without the presence of Sutherlin, it is well taken. We are not prepared, however, upon the state of the record before us to declare that Sutherlin was deprived of effective assistance of counsel, and to the extent that it is Sutherlin's complaint that he was clearly denied that constitutional right, the assignment is overruled. See *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus, which provide:

"2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.

"3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."

The sixth assignment raises the question whether the order below imposed a penalty disproportionate to a purported plea agreement made by Sutherlin and was punitive rather than remedial. Those were questions not raised below and which, therefore, cannot be raised now because the existing record provides this court no foundation upon which to rule. As the state submits, it may well be true that actual proceeds proven to be derived from traffic in illicit drugs are subject to forfeiture and that such forfeiture is not punishment but is remedial in nature. However, we do not, and cannot on this record, so decide. The sixth assignment, therefore, is overruled.

The seventh assignment of error is overruled. It repeats the thesis upon which the third assignment is predicated, *i.e.,* unlawful seizure because there was a warrantless search of the Mount Airy Apartments residence, and is not well taken for the reasons given above.

We agree with the court of appeals in *In re Forfeiture of 1986 Buick Somerset* that the failure to have present, as in this case, the owner of property sought to be forfeited requires us to vacate the judgment and to remand this cause for a new forfeiture hearing at which Sutherlin would have the right to appear. Accordingly, the judgment of the Hamilton County Court of Common Pleas is reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

DOAN, P.J., and GORMAN, J., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.