JOURNAL ENTRY and OPINION
Defendant-appellant George Shubutidze appeals from the order of the Cuyahoga County Court of Common Pleas, Juvenile Division, that adjudicated him to be a delinquent child and committed him to the custody of the Ohio Department of Youth Services (ODYS) for a minimum period of one year to a maximum period not to exceed his attainment of the age of twenty-one. The juvenile court found appellant guilty of acts that would constitute the crimes of attempted rape, kidnapping and assault if committed by an adult.
Appellant challenges the juvenile court's orders on several grounds. He asserts that the findings are neither based upon sufficient evidence nor sustained by the weight of the evidence, that the crimes of attempted rape and kidnapping are allied offenses and, consequently, he could not be properly found guilty of both, that he was denied his right to effective assistance of trial counsel, that he was denied his right to be present during the testimony of one of the state's witnesses, that the juvenile court erred in admitting certain testimony and evidence, and that the juvenile court erred in amending the charge of attempted rape.
This court has reviewed the record in light of each of appellant's assertions. Although most are unsupported, the juvenile court erred in finding appellant guilty of attempted rape; therefore, its order of adjudication is modified and, as modified, the juvenile court's orders are affirmed.
Appellant came before the juvenile court as a result of an incident that occurred on the evening of December 14, 1999. The two young female victims, "A" and "O,"[1] were acquaintances of appellant. All three attended Mayfield High School and were members of the Russian-speaking community of Mayfield Heights, and appellant and "A" lived in the same apartment complex, viz., Gates Mills Towers, a complex located near Eastgate Shopping Center.
At approximately 6:00 p.m., "O" telephoned "A" from her home in Plymouth Park Apartments. "O" needed some poster board for a school project and requested "A" to accompany her to the shopping center's drugstore to make the purchase. The two agreed to meet on the sidewalk in front of Gates Mills Towers. It took "O" approximately twenty minutes to accomplish this; however, the two were required to return to "A"`s apartment momentarily to retrieve something before the errand was underway.
The two young women then proceeded to the shopping center. They traveled toward their destination behind the building that contained the Regal Cinemas, intending to use a "cut-through"[2] or alley to access the storefronts. While they were walking, appellant approached them. Although appellant attempted to engage the young women in conversation in their native language, they were unreceptive since appellant, in the past, had taunted them. They attempted to walk past him.
Appellant, at that point, ordered them to remain. He brandished an aerosol container that bore the legend "Computer Cleaner," informing them if they refused, he would "spray that stuff at [them]." The two young women, however, continued to edge away. Appellant then "ran up in front of ["O"], and he sprayed [the container's contents] at ["O"`s] face."
The spray struck "O" in the mouth; she reacted by bringing her hands to her face. "A" defended her companion by telling appellant to "stop." Appellant responded by directing the spray at "A."
As "A" covered her eyes, appellant tripped her, causing her to fall backward. He then leapt upon her and straddled her over her pubic area. "A" struggled beneath appellant while "O" shouted at him to "get off her." Appellant, however, reached behind him to pull at "A"`s full-length skirt, thereby raising it to her upper thighs, and told "A" he was "going to f*** her." One of appellant's hands touched the skin of "A"`s thigh as he stated this.
Both of the young women began "screaming." The commotion attracted the attention of a shopping center patron as she drove through the nearby parking lot. The women stopped her vehicle and ordered appellant up and away from the young women. Appellant obeyed. The victims took that opportunity to flee to "the Russian cafe" near the cinema.
Once inside, "A" used her cellular telephone to call "O"`s sister, who was the only older family member available to them at the time. They were advised to return home; however, "O" wanted first to complete her errand and, therefore, "A" waited for her friend as "O" made the poster board purchase before the two heeded the advice.
Upon her return to her apartment, "A" cleaned her muddy clothing and informed her brother of the incident. He counseled her to report it; "A" telephoned the Mayfield Heights Police Department at 8:11 p.m.
Five minutes later, Officer Kelly Florman responded to "A"`s apartment. As Florman took "A"`s statement, Florman broadcast appellant's name and description via police radio.
Officer Robert Lord heard the dispatch. Lord knew appellant from previous encounters with him. At 7:00 p.m., while obtaining dinner at the shopping center, Lord had seen appellant in the cut-through. Lord therefore returned to the shopping center.
Upon his arrival, at approximately 8:25 p.m., Lord observed appellant "sitting on a bench with two other friends." Lord radioed this information and immediately received the assistance of his supervising officer, Sergeant Robert Cunningham. The two officers took appellant into custody, advising him "he matched the description of a suspect [they] were looking for in a crime [they] were investigating." Appellant's friends told the officers they had met up with appellant in the alley approximately twenty minutes earlier.
Cunningham placed appellant into his patrol vehicle. As Cunningham proceeded toward "A"`s apartment building, he told appellant "he was being taken over to see if he could be identified by one of the victims." Appellant responded, "[S]o if she picks me out, I'm screwed." This comment Cunningham found memorable since the officers had not informed appellant of either the nature of the reported crime or the victim's sex.
When presented to each victim, both "A" and "O" identified him as their assailant. Florman obtained a written statement from "O," and appellant was formally arrested.
A three-count complaint of delinquency against appellant was filed the following day. Appellant was charged with the following offenses: (1) kidnapping, R.C. 2905.01(A)(4); (2) attempted rape, R.C.2923.02(A)/2907.02(A)(1); and (3) assault, R.C. 2903.13(A). Appellant entered a denial of the charges and retained counsel to represent him.
Appellant's case proceeded to an adjudicatory hearing on February 7, 2000. The juvenile court, with the aid of an interpreter, heard the testimony of the two victims.
The three police officers involved in the investigation also testified. Subsequently, during argument on appellant's motion to dismiss the charges, the state moved to amend the charge of attempted rape from a complaint of violation of R.C. 2907.02(A)(1) to a complaint of violation of R.C. 2907.02(A)(2). The court indicated it would consider that change as it denied appellant's motion.
Thereafter, appellant presented the testimony of three of his friends and his parents; appellant also testified in his own behalf. Appellant stated he had not seen the victims the evening of the incident and instead indicated he had been in the company of either his parents or his friends during the relevant time period.
The juvenile court ultimately found appellant to be a delinquent child on each count, viz., kidnapping, attempted rape amended to a charge under subsection (A)(2) of R.C. 2907.02 rather than subsection (A)(1), and assault. At the conclusion of the dispositional hearing, the juvenile court committed appellant to the custody of ODYS for a minimum period of one year to a maximum period not to exceed appellant's attainment of the age of twenty-one.
Appellant has filed a timely appeal of the foregoing order. He presents eight assignments of error for review, which will be addressed in logical order and combined where appropriate.
Appellant's seventh and eighth assignments of error state:
 ASSIGNMENT OF ERROR VII APPELLANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW WHEN THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY ADMITTING THE TESTIMONY OF OFFICER FLORMAN REGARDING THE VERACITY OF THE CHILD VICTIMS.
 ASSIGNMENT OF ERROR VIII THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND COMMITTED PLAINT (SIC) ERROR BY PERMITTING EVIDENCE PERTAINING TO ALLEGED OTHER CRIMES IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
These assignments of error challenge evidentiary rulings made by the juvenile court. The decision to admit or to exclude evidence is left to the sound discretion of the juvenile court and will not be reversed absent an abuse of that discretion. In re Carter (1997),123 Ohio App.3d 532.
Appellant first argues Officer Florman improperly was permitted to vouch for the credibility of the victims' accounts of the incident in derogation of the supreme court's directive as set forth in State v. Boston (1989), 46 Ohio St.3d 108. A review of the record does not support appellant's argument.
During cross-examination of the victims, appellant focused on their inability to state a precise time for the incident. Moreover, of Sgt. Cunningham, appellant asked questions that clearly were intended to imply appellant and his family were unpopular with Mayfield Heights officials due to previous problems in which the family had been involved. Appellant thereby attempted to cast doubt upon the legitimacy and thoroughness of the police investigation of the incident.
The state responded to this defense theory, in part, with the following direct examination of its next witness, Florman:
 Q. Now you have gone through training. What training did you go through for an officer to be an officer?
 A. There is a three-month police academy, various police classes that I have taken throughout the six years.
 Q. Did you ever go to training interrogation classes, interview classes?
A. Yes.
 Q. Have you, in your, I'm sorry, was it five years that you have been on —
A. Six and a half.
 Q. Six and a half, I apologize, (inaudible) Have you made several interviews in those six and a half years?
A. Yes.
 Q. And what was your feeling or what did you think when you were interviewing these victims?
[DEFENSE COUNSEL]: Objection.
THE COURT: Overruled.
 A. Once I heard both of their stories and that they were similar, I believed that they were true.
 Q. Did you have any judgment as far as their veracity, whether or not they were truthful?
[DEFENSE COUNSEL]: Objection.
THE COURT: Overruled.
A. Yes, I believed they were truthful.
 Q. And there was some * * * and there was (sic) some questions * * * about the time that was written there, about 8:00 p.m. Do you remember a conversation with [A] at that point of time?
A. Yes, yes.
Q. Why was 8:00 p.m. put down.
A. Well, at first she had put down —
[DEFENSE COUNSEL]: Objection.
THE COURT: Overruled, go ahead.
 A. At first she had put down 8:25, which is the time that she started writing this report, this statement form, and I had when I noticed that, after she handed it back to me, I'm not exactly sure what I said. It was something along the lines that that time is not now, but when it happened, and she scribbled over it, 8:00.
In context, therefore, Florman was not vouching for the victim's credibility; rather, she explained the investigative procedure she had followed in order to rebut appellant's implied charge of impropriety. State v. Norman (1982), 7 Ohio App.3d 17; State v. Morris (1983),8 Ohio App.3d 12; see, also, State v. Dawson (Nov. 18, 1993), Cuyahoga App. No. 63122, unreported. Florman's testimony also was given to explain the reason for the time discrepancy as set forth on A `s written statement. Since the testimony was admitted for proper purposes, therefore, the trial court did not err. State v. Rogers (May 21, 1998), Cuyahoga App. Nos. 72736, 72737, unreported.
Similarly, although appellant argues evidence of his prior bad acts of vandalism and curfew violation was improperly admitted, the record fails to support his argument.
It first must be noted appellant volunteered this evidence in his cross-examination of the state's witnesses and his own direct testimony; hence, he has waived any claim of error in its admission. State v. Hartford (1984), 21 Ohio App.3d 29.
Secondly, appellant purposely introduced this evidence as a way to discredit the police investigation of the incident. Appellant sought to imply he merely was a scapegoat focused upon by the police due to his family's unpopularity and his earlier participation in subsequently renounced misdeeds.
Under these circumstances, the juvenile court did not either err or abuse its discretion in permitting the introduction of the challenged evidence.
For the foregoing reasons, appellant's seventh and eighth assignments of error are overruled.
Appellant's fifth assignment of error states:
 THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF APPELLANT BY ALLOWING THE EXAMINATION OF A STATE WITNESS IN THE FORCED ABSENCE OF APPELLANT, THUS DENYING APPELLANT HIS CONSTITUTIONAL RIGHT TO BE PRESENT AT EVERY STAGE OF THE TRIAL IN VIOLATION OF APPELLANT'S RIGHT TO CONFRONTATION AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO, AND CRIM.R. 43(A).
Appellant argues the juvenile court violated his constitutional right of confrontation when, with defense counsel's acquiescence, it permitted Officer Lord to begin testifying although appellant, himself, had not yet returned from a luncheon recess. Appellant contends defense counsel lacked authority to waive his presence. This court disagrees.
Crim.R. 43(A) mandates the presence of a defendant after the commencement of trial unless that absence is voluntary. State v. Sutherlin (1996), 111 Ohio App.3d 287. A defendant's absence is voluntary if it is a product of his own free choice and unrestrained will. State v. Carr (1995), 104 Ohio App.3d 699, 703. Voluntariness is an issue for the trial court to determine. Id. Moreover, since trial counsel is presumed to be authorized to act for his client, an express waiver by counsel is sufficient to waive the right [to appear personally] because the client's voluntary choice is implicit in and demonstrated by the waiver given by counsel. Id.
In this case, a review of the record demonstrates the juvenile court admonished everyone to return from the luncheon recess by 2:00 p.m. Promptly at that time, the case was called; however, appellant was late. The juvenile court asked defense counsel if he wanted everyone to wait for appellant. Defense counsel declined, stating, I assume he is on his way, and indicating the prosecutor could get through some of the preliminary matters, such as the officer's illustrious career and so forth before [appellant] gets here. The juvenile court then permitted Lord to begin his testimony. The record reflects appellant was present in the courtroom by the time Lord's direct examination was concluded.
Under these circumstances, the juvenile court properly determined appellant's brief absence was voluntary. Additionally, appellant suffered no prejudice from this determination. State v. Robinson (Jan. 26, 2001), Montgomery App. No. 17393, unreported. See, also, State v. Williams (1983), 6 Ohio St.3d 281 at 286.
Accordingly, appellant's fifth assignment of error also is overruled.
Appellant's fourth assignment of error states:
 THE PREPARATION AND PERFORMANCE OF APPELLANT'S TRIAL COUNSEL WAS DEFICIENT AND PREJUDICED APPELLANT IN SUCH A WAY AS TO VIOLATE THE APPELLANT'S RIGHTS AS GUARANTEED BY THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
Appellant argues his trial counsel provided constitutionally ineffective assistance, citing several instances that he contends demonstrate counsel's inadequacy.
The claim of ineffective assistance of counsel requires proof that "counsel's performance has fallen below an objective standard of reasonable representation" and, in addition, that prejudice arises from counsel's performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus; see, also, State v. Lytle (1976),48 Ohio St.2d 391. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, supra, paragraph three of the syllabus.
The burden is on defendant to prove ineffectiveness of counsel. State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is strongly presumed to have rendered adequate assistance. Id.; see, also, Vaughn v. Maxwell (1965), 2 Ohio St.2d 299. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. Id.
The record in this case fails to demonstrate counsel's performance fell below an objective standard of reasonable representation.
First, appellant argues counsel was deficient for his waiver of appellant's right to be present during Officer Lord's testimony. However, the juvenile court expressly had ordered the parties to return at 2:00 p.m. Upon reconvening the proceedings, the juvenile court also assured counsel that appellant was "on his way." It was reasonable for counsel, under the circumstances, to accommodate the juvenile court, permitting Lord's testimony on only preliminary matters prior to appellant's late arrival. Moreover, as previously discussed, appellant suffered no prejudice due to his brief absence.
Appellant next argues the record proves counsel failed to request a separation of the state's witnesses, thus compromising his defense. See Evid.R. 615. It is true no formal motion appears in the transcript. Nevertheless, since the transcript does indicate the witnesses remained outside the courtroom until called for trial, and since regularity is presumed, this court will not assume either any impropriety or any deficiency occurred. State v. Morris, supra at 18; State v. Tichon (1995), 102 Ohio App.3d 758.
Appellant further argues counsel unjustifiably failed to object to the admission of the evidence challenged in appellant's seventh and eighth assignments of error. Appellant's argument, however, is unsupported in the record.
As a perusal of the relevant portion of the transcript demonstrates, despite its admissibility, counsel did object to Florman's description of the circumstances surrounding the taking of the victims' statements.
Moreover, as previously discussed, the decision to permit the introduction of appellant's prior misdeeds was a tactical one. Counsel sought thereby to provide a reason for the officers' focus upon appellant as the perpetrator. The defense theory suggested the officers ignored evidence indicating appellant was not present at the scene at the time the victims stated the incident occurred. Counsel cannot be faulted for this strategy. State v. Holly (July 8, 1999), Cuyahoga App. No. 74452, unreported; State v. Bluford (Dec. 9, 1999), Cuyahoga App. No. 75228, unreported.
Finally, appellant argues counsel was deficient for his failure to proffer excluded evidence. A review of the context in which counsel's attempts to introduce the evidence occurred, however, demonstrates the evidence was inadmissible pursuant to Evid.R. 608(B). Thus, although counsel's attempts were strategically motivated, subsequent proffers would have been meaningless. Counsel cannot be deemed ineffective merely for failure to perform a vain act. Vaughn v. Maxwell, supra.
The record clearly reveals defense counsel was prepared and zealous in his advocacy for his client. Appellant has failed to prove his claim of ineffective assistance of trial counsel; therefore, his fourth assignment of error also is overruled.
Appellant's second, third and sixth assignments of error are addressed together as follows:
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF APPELLANT BY DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL AS TO COUNT I AND COUNT II OF THE COMPLAINT PURSUANT TO CRIM.R. 29(A) IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16
OF THE CONSTITUTION OF THE STATE OF OHIO.
 ASSIGNMENT OF ERROR III THE JUDGMENTS OF CONVICTION ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE CONSTITUTION OF THE STATE OF OHIO.
 ASSIGNMENT OF ERROR VI THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF APPELLANT BY SUA SPONTE AMENDING THE CHARGE OF ATTEMPTED RAPE TO CONFORM WITH THE COURT'S INTERPRETATION OF THE EVIDENCE PRESENTED IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION, CRIM.R. 7(D), AND JUV.R. 22(B).
Appellant argues the juvenile court improperly denied his motions for acquittal on the attempted rape and kidnapping charges.[3] Appellant contends these charges were neither based upon sufficient evidence nor supported by the weight of the evidence. Appellant further contends the juvenile court lacked authority to find him guilty of a different type of attempted rape than the charge set forth in the complaint.
When determining whether the juvenile court's finding of delinquency is supported, this court applies the same standards of review applicable to criminal convictions. In re Washington (1996), 75 Ohio St.3d 390; In re Watson (1989), 47 Ohio St.3d 86, 91.
Thus, a child's motions for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crime has been proven beyond a reasonable doubt. In re Washington, supra. The court is required to view the evidence in a light most favorable to the state. State v. Martin (1983), 20 Ohio App.3d 172.
With regard to an appellate court's function in reviewing the weight of the evidence, the supreme court has set forth the following as the relevant analysis:
 * * * Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. (Citation omitted.) * * *
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a thirteenth juror and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs [v. Florida (1982)], 457 U.S. [31], at 42, 102 S.Ct. [2211] at 2218, 72 L.E.2d [652] at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 (The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.).
State v. Thompkins (1997), 78 Ohio St.3d 380 at 387. (Emphasis added.)
Thus, this court must be mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the trier of fact. In re Washington, supra, citing State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1. A review of the record in this case demonstrates the juvenile court correctly concluded appellant is delinquent by having committed the offense of kidnapping. In the Matter of Black (July 15, 1993), Cuyahoga App. No. 63036, unreported; In the Matter of: May (Sept. 25, 1980), Franklin App. No. 80AP-397, unreported.
With regard to the kidnapping charge, the victims' testimony established appellant did not permit them to proceed on their way but, rather, caused A to fall to the ground; appellant then leapt upon her, straddled her below her abdomen in order to restrain her ability to move, touched her thigh as he pushed her skirt up, and informed her he was going to have sex with her. The foregoing evidence was sufficient to support each element of R.C. 2905.01(A)(4).
Furthermore, in view of both the testimony of Officer Lord, which corroborated that of the victims by placing appellant at the cut-through immediately after the incident, and appellant's inability to account for all of his time on that evening, the juvenile court was within its prerogative to give credit to the victims' version of the incident. Id.
However, consideration of the supreme court's recent decision as set forth in State v. Wells (2001), 91 Ohio St.3d 32, leads to the conclusion the juvenile court incorrectly determined the state provided sufficient evidence to prove appellant committed the offense of attempted rape. Cf. In re Washington, supra. During the incident, appellant exposed neither his own nor the victim's private area, and he made no attempt to engage in sexual conduct, as that term is defined in R.C. 2907.01(A).
A review of the evidence demonstrates, instead, it was sufficient to prove appellant committed the offense of gross sexual imposition in violation of R.C. 2907.05, a lesser-included offense of the crime of attempted rape. State v. Johnson (1988), 36 Ohio St.3d 224 . Appellant touched A `s thigh while straddling her as she struggled and also told A he was going to have sexual relations with her. A reasonable factfinder could conclude appellant forcibly compelled A to submit to his sexual contact with her. In re Anderson (1996), 116 Ohio App.3d 441; In re Williams (Dec 22, 2000), Hamilton App. No. C-990841, unreported; In re Pollitt (Oct. 10, 2000), Adams App. No. 00 CA 687, unreported; In the Matter of Anderson (Nov. 6, 1998), Marion App. No. 9-98-19, unreported. Additionally, the juvenile court could determine both the victims' retelling of the events of that evening and the victims' understanding of the Russian words appellant used were accurate in spite of the defense attempt to minimize their testimony. Id.; In the Matter of Black, supra.
This analysis effectively resolves appellant's argument presented in his sixth assignment of error. The juvenile court has the authority to determine a child committed a lesser-included offense of the offense alleged. In re Williams, supra; In re Pollitt, supra.
Based upon the foregoing, appellant's second and third assignments of error are sustained in part; appellant's sixth assignment of error is overruled.
Appellant's first assignment of error states:
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF APPELLANT WHEN IT ADJUDICATED APPELLANT DELINQUENT IN BOTH THE ATTEMPTED RAPE CHARGE AND THE KIDNAPPING CHARGE SINCE THE CHARGES OF ATTEMPTED RAPE AND KIDNAPPING ARE ALLIED OFFENSES OF SIMILAR IMPORT.
Appellant argues the juvenile court could not properly "convict" him of both attempted rape and kidnapping. Appellant's argument is made problematical for two reasons.
First, this court's disposition of appellant's second and third assignments of error render appellant's argument inapposite since the state's evidence proved appellant committed gross sexual imposition rather than rape.
Secondly, appellant presents neither an argument nor authority to support a conclusion the provisions of R.C. 2945.21(A) apply to juvenile proceedings. See, In re: Durham (Sept. 17, 1998), Franklin App. Nos. 97APF12-1653, 97APF12-1654, unreported. Although this court previously has applied them, it did not consider that precise issue in doing so. In re Black, supra.
Nevertheless, it is not necessary to address appellant's argument; since he failed to present it in the trial court, he has waived it. State v. Williams (1977), 51 Ohio St.2d 112.
Accordingly, appellant's first assignment of error is overruled.
Appellant's second and third assignments of error having been sustained in part, the juvenile court's adjudicatory order is modified to reflect appellant's guilt of the offense of gross sexual imposition rather than attempted rape. In all other respects, the juvenile court's orders are affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J. and MICHAEL J. CORRIGAN, J. CONCUR
 ____________________________________ PRESIDING JUDGE, KENNETH A. ROCCO
[1] To protect their privacy, the victims are referred to in this Opinion by only the initials of their first names.
[2] Quotes indicate testimony given by a witness at the adjudicatory hearing.
[3] Appellant does not challenge the trial court's determination he was delinquent for committing an act that would have constituted the offense of assault if committed by an adult.