**HITT et al.; Stoneburner et al., Appellants,**

**v.**

**ANTHEM CASUALTY INSURANCE GROUP et al., Appellees.**

[Cite as *Hitt v. Anthem Cas. Ins. Group* (2001), 142 Ohio App.3d 262.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2000–T–0042.

Decided April 16, 2001.

*Adam L. Sperling,* for appellants.

*Christopher A. Tipping,* for appellees.

WILLIAM M. O'NEILL, Presiding Judge.

Appellants, Harold Stoneburner, Kathleen Stoneburner, Daniel Stoneburner, Linda S. Hinkle, f.k.a. Linda S. Loosemore, and Kevin Loosemore, appeal from a decision of the Trumbull County Court of Common Pleas finding in favor of appellees, Anthem Casualty Insurance Group, Shelby Insurance Company, and

Insura Property and Casualty Company, in a declaratory judgment action involving the duty to defend in a personal injury action. The following facts are relevant to a determination of this appeal.

On July 2, 1994, Thomas M. Hitt ("Hitt") purchased a used Honda CL 100 dirt bike for his minor son, Thomas J. Hitt ("T.J."). Hitt took possession of the bike on that day and paid the seller $200 cash. Hitt also took possession of the title to the bike as it was signed over by the seller. On July 22, 1994, T.J. was involved in a dirt bike collision with two other minors riding on their bike, Daniel Stoneburner and Kevin Loosemore, appellants herein. As a result of the collision, which was allegedly caused by T.J., a personal injury action was filed against T.J. and his parents by Daniel Stoneburner, Daniel's parents, Kevin Loosemore, and Kevin's mother. That case, assigned case No. 96 CV 1218, is currently pending in the Trumbull County Court of Common Pleas.

On October 14, 1997, the Hitts filed the underlying declaratory judgment action against appellees, the aforementioned insurance companies, seeking a declaration regarding the rights and responsibilities of the insurance companies to provide coverage and to provide a defense. Appellees filed an answer denying that any coverage existed and denying that any obligation existed to provide a defense based upon specific and unambiguous terms and provisions in the homeowner's policy in question. Appellees also filed a counterclaim for declaratory judgment asserting that it had no obligation to provide coverage or a defense. Appellants entered the declaratory judgment action as intervening plaintiffs.

The parties waived a jury trial and presented evidence to the trial court on September 22, 1999. On February 18, 2000, the trial court ruled in favor of the insurance companies after concluding that they were not obligated to provide the Hitts with insurance coverage or a defense.

Appellants timely filed a notice of appeal and have now set forth the following assignment of error:

"The trial court erred to the prejudice of Intervening Plaintiffs Appellants in declaring the homeowners insurance policy did not obligate Defendants–Appellees to provide insurance coverage and tender a defense to its insureds."

In the sole assignment of error, appellants contend that the trial court erred by concluding that the homeowner's insurance policy did not obligate appellees to provide insurance coverage and tender a defense to the Hitts.

The relevant portions of the insurance policy provide as follows. First, Section II, Liability Coverages, states:

"Coverage E—Personal Liability

"If a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies, we will:

"1. Pay up to our limit of liability for the damages for which the 'Insured' is legally liable * * * and

"2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false, or fraudulent. We may investigate and settle any claim or suit that we may decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the 'occurrence' equals our limit of liability."

However, Section II, Exclusions, provides as follows:

"Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to 'bodily injury' or 'property damage':

"* * *

"f. Arising out of:

"(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an 'insured';

"(2) The entrustment by an 'insured' of a motor vehicle or any other motorized land conveyance to any person; or

"(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above."

The policy then sets forth exceptions to the exclusions. Specifically, it states:

"This exclusion does not apply to:

"* * *

"(2) A motorized land conveyance designed for recreations use off public roads, not subject to motor vehicle registration and:

"(a) Not owned by an 'insured.' "

The parties stipulated prior to trial that the dirt bike falls within the exclusion set forth in division (f) of Section II, Exclusions. Thus, the only question that remains is whether or not the dirt bike falls within one of the exceptions to exclusion. In other words, liability coverage for the dirt bike operated by T.J. at the time of the collision is *not* excluded if (1) the dirt bike was designed for recreational use off public roads, (2) the dirt bike was not subject to motor vehicle registration, and (3) the dirt bike was not owned by an insured at the time of the accident.

■ The accident occurred twenty days after Hitt took possession of the bike. An Ohio Certificate of Title was not issued to Hitt until July 25, 1994, three days *after* the collision. Appellants argue that Hitt did not become owner until a certificate of title was issued in his name three days after the accident. The trial court held that Hitt became an owner of the dirt bike on the day he took possession. We agree with the trial court.

■ It is clear that the insurance policy itself does not define the terms "own" or "ownership." Appellants claim that the lack of such definition makes the policy ambiguous. However, when the language set forth in the policy has a plain and ordinary meaning, courts may not resort to construction of the language. *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 166–167, 10 OBR 497, 499–500, 462 N.E.2d 403, 406–407. Additionally, the Supreme Court of Ohio has held:

"Thus, in reviewing an insurance policy, words and phrases used therein 'must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined.'" *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 12, 540 N.E.2d 716, 717–718, quoting *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 275–276, 436 N.E.2d 1347, 1347–1349.

■ Thus, a court has an obligation to give words their natural and commonly accepted meanings wherever possible. Furthermore, "[t]he mere absence of a definition in an insurance contract does not make the meaning of the term ambiguous." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.

Accordingly, the word "own" should be given its natural and commonly accepted meaning. "Own" is defined in Webster's II New College Dictionary (1999) 785, as "[t]o have or possess." "Ownership" is defined therein as "[l]egal right to the possession of a thing." *Id.* Additionally, "ownership" is defined in Black's Law Dictionary (6 Ed.1990) 1106, as follows:

"Collection of rights to use and enjoy property, including right to transmit it to others. The complete dominion, title, or proprietary right in a thing or claim. The entirety of the powers of use and disposal allowed by law.

"The right of one or more persons to possess and use a thing to the exclusion of others. The right by which a thing belongs to some one in particular, to the exclusion of all other persons. The exclusive right of possession, enjoyment, and disposal; involving as an essential attribute the right to control, handle, and dispose." (Citation omitted.)

■ Based upon these definitions, we conclude that ownership of the dirt bike transferred when Hitt took physical possession of the property to the exclusion of all others. This conclusion is consistent with Ohio case law. In *Smith v. Nationwide Mut. Ins. Co.* (1988), 37 Ohio St.3d 150, 524 N.E.2d 507, the Supreme Court of Ohio held that for purposes of determining insurance coverage, ownership of a motor vehicle passes to the buyer at the time the vehicle is physically delivered from the seller to the buyer as part of the purchase contract. The fact that a certificate of title is not issued until some time later is irrelevant. *Id.* at 152–153, 524 N.E.2d at 508–509. According to the court, the purpose and use of the Ohio Certificate of Title Act is limited to preventing " 'the importation of stolen motor vehicles, to protect Ohio bona-fide purchasers against thieves and wrongdoers, and to create an instrument evidencing title to, and ownership of, motor vehicles.' " *Id.,* quoting *Hughes v. Al Green, Inc.* (1981), 65 Ohio St.2d 110, 115, 19 O.O.3d 307, 310, 418 N.E.2d 1355, 1358. Thus, "R.C. 4505.04 is irrelevant to all issues of ownership except those regarding the importation of vehicles, rights as between lienholders, rights of bona-fide purchasers, and instruments evidencing title and ownership. Otherwise, motor vehicle ownership rights will be determined by the Uniform Commercial Code." *Smith* at 153, 524 N.E.2d at 509. See, also, *Calderone v. Jim's Body Shop* (1991), 75 Ohio App.3d 506, 510, 599 N.E.2d 848, 850–851.

R.C. 1302.42, which addresses that portion of the Uniform Commercial Code that concerns passing of title, states:

"(B) Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods * * * even though a document of title is to be delivered at a different time or place * * *."

In the case *sub judice,* it is undisputed that Hitt took possession of the dirt bike prior to the accident. Additionally, the seller signed over title to Hitt contemporaneously with the change of possession. Thus, he was the owner. We see no reason to differentiate between automobiles and dirt bikes for purposes of determining ownership. Based upon the foregoing analysis, the trial court did not err in declaring that appellees did not have a duty to provide coverage or to defend in this case. Appellants' sole assignment of error is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD and CHRISTLEY, JJ., concur.