OPINION
{¶ 1} Plaintiffs-appellants Clyde and Phyllis Searcey appeal from a summary judgment rendered against them on their claim for uninsured motorist insurance coverage against defendant-appellee Erie Insurance Company.[1] Searcey contends that the trial court erred by rendering summary judgment against him because he raised genuine issues of fact with regard to coverage. Erie, on cross-appeal, contends that the trial court erred by determining that Erie lacked standing, following the entry of summary judgment, to file motions with regard to the subsequent hearing on damages as between Searcey and the tortfeasor.
 {¶ 2} We conclude that Searcey has failed to demonstrate the existence of any issues with regard to coverage, and that the trial court did not err in rendering summary judgment against him. We therefore conclude that Erie's assignment of error on cross-appeal is moot.
 {¶ 3} Accordingly, the judgment of the trial court is affirmed.
 I {¶ 4} The evidence relevant to this appeal is gleaned from the deposition testimony of Clyde Searcey. Searcey, a retired automobile dealer, and Ron Pullins, owner of a car lot known as New Lebanon Motors (hereinafter "NLM"), had an unwritten arrangement whereby Searcey would use NLM's car dealer numbers to purchase used automobiles at auctions. Pullins registered Searcey at the auctions under NLM's name. Searcey had permission to sign titles and odometer statements in NLM's name. Searcey would purchase the automobiles with his own money, but he would immediately title them to NLM. The automobiles would then be placed on NLM's lot for sale at a price set by Searcey. Searcey received all the proceeds from the sale of each such vehicle and would then pay NLM the sum of one hundred dollars per vehicle. Searcey described the one hundred dollar fee as a "commission" charged by NLM for the use of the lot. Searcey personally paid for any repairs needed on these vehicles prior to sale. He also stated that if any repairs were needed within a "couple of days" after the sale, he would personally pay for such. Searcey testified that he did not work for NLM; instead he described himself as an "agent" of NLM. He also testified that he drove some of these vehicles for personal use. However, he testified that once a vehicle was placed on the NLM, it stayed there until sold.
 {¶ 5} In October, 1998, Clyde Searcey was operating a 1986 Ford Crown Victoria when he was rear-ended by an uninsured motorist. Searcey had purchased the Ford at auction and titled it in NLM's name. Searcey testified that he took possession of the Ford at the auction and that he kept it for personal use. Searcey was driving home from the grocery store when the accident occurred. Following the accident, Searcey personally sold the Ford. There is no evidence that the Ford was ever on NLM's lot prior to or after the accident.
 {¶ 6} Searcey suffered injuries to his knee as a result of the accident. Thereafter, he filed a lawsuit against the tortfeasor. Searcey also made claims for uninsured motorist coverage against NLM's insurer, Erie Insurance Company (Erie).
 {¶ 7} Following discovery, Erie filed a motion for summary judgment, in which it argued that it did not extend coverage to Searcey. Searcey opposed the motion, claiming that he was an agent of NLM, that the Ford was owned by NLM, and that he was therefore entitled to coverage.
 {¶ 8} The trial court, in rendering summary judgment against Searcey, agreed with Erie that neither Searcey or the Ford Crown Victoria he was driving at the time of the accident were covered by the Erie policy. The summary judgment was entered prior to the determination of damages against the tortfeasor.
 {¶ 9} From this judgment, Searcey appeals.
 II {¶ 10} Searcey raises the following three assignments of error:
 {¶ 11} "THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO APPELLEE, ERIE INSURANCE COMPANY, PURSUANT TO RULE 56 OF THE OHIO RULES OF CIVIL PROCEDURE.
 {¶ 12} "THE TRIAL COURT ERRED WHEN IT HELD THAT THE FORD WAS NOT A CAR INSURED UNDER THE ERIE POLICY.
 {¶ 13} "THE TRIAL COURT ERRED WHEN IT HELD THAT MR. SEARCEY IS NOT AN INSURED UNDER THE INSURANCE CONTRACT."
 {¶ 14} All of Searcey's assignments of error contend that the trial court erred in rendering summary judgment against him. In support, he argues that he and the Ford were both covered under the Erie insurance policy. Specifically, he contends that coverage exists because the Ford was owned by NLM and because he was an agent of NLM.
 {¶ 15} For purposes of uninsured motorists coverage, the policy provides that Erie will pay for any damages which involve "bodily injury to anyone we protect." "Anyone we protect" is defined as "you [the named insureds]" or "anyone else using an auto we insure with your permission." Under the terms of the policy, NLM, Ron Pullins and Kyle Pullins were named as insureds. Since Searcey is not a named insured, the resolution of this case depends on whether the Ford was an auto insured by Erie.
 {¶ 16} Searcey argues that NLM owned the Ford because the vehicle was titled in its name. The trial court rejected this argument, finding that NLM did not own the car, because the Ford was purchased by Searcey with his own monies, was used for his own personal business, and was never on NLM's lot or in its possession.
 {¶ 17} We have reviewed the policy and note that the Erie policy defines insured autos as owned autos. The policy does not provide a definition for the term "owned." However, when a word is not defined in a policy of insurance, a court must give the word its "natural and commonly accepted meaning" whenever possible. Western Reserve Mut. Cas. Co. v. Williams, Franklin App. No. 05AP-120, 2005-Ohio-4250, ¶ 8. Therefore, the term "owned autos" should be assigned its natural and commonly accepted meaning.
 {¶ 18} To "own" means "to have or to possess." Hitt v.Anthem Cas. Ins. Group (2001), 142 Ohio App. 3d 262, 266, citing Webster's II New College Dictionary (1999) 785. "Ownership" is defined as the "legal right to the possession of a thing." Id. "Ownership" is also defined as follows: "Collection of rights to use and enjoy property, including right to transmit it to others. The complete dominion, title, or proprietary right in a thing or claim. The entirety of the powers of use and disposal allowed by law. The right of one or more persons to possess and use a thing to the exclusion of others. The right by which a thing belongs to some one in particular, to the exclusion of all other persons. The exclusive right of possession, enjoyment, and disposal; involving as an essential attribute the right to control, handle, and dispose." Id. Citing Black's Law Dictionary (6 Ed. 1990) 1106.
 {¶ 19} The Ohio Supreme Court has held that ownership, with regard to insurance coverage, must be determined by utilizing the provisions of the Uniform Commercial Code. Smith v. NationwideMut. Ins. Co. (1988), 37 Ohio St.3d 150, 153. According to the UCC, "unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place * * *." Id. at 152, citing R.C. 1302.42(B), U.C.C. 2-401.
 {¶ 20} In this case, the Ford was never placed on the NLM lot. Searcey, at all times relevant hereto, maintained physical possession of the car, which he used for personal matters. We further note that Searcey testified that he could use any of the cars he purchased without NLM's permission, because he was the owner of the vehicles. He further testified to this ownership by noting that he was responsible for any repairs needed on the vehicles prior to sale and immediately thereafter. Additionally, Searcey personally sold the Ford after the accident, without ever placing it on NLM's lot for sale.
 {¶ 21} Based upon the foregoing, we agree with the trial court's determination that the Ford was not owned by NLM and that it was therefore not covered by the Erie policy of insurance.
 {¶ 22} We next address Searcey's claim that he owned the Ford as an agent of NLM, so that NLM actually owned the Ford through him as its agent. The evidence in the record would support, at most, a conclusion that NLM acted as Searcey's agent. Searcey bought the cars with his money, and when he sold each car, he retained the profit from the sale, paying NLM a fixed amount, $100, on each sale, thereby compensating NLM for the use of its lot and its dealer number. No reasonable finder of fact could find that Searcey was acting as NLM's agent.
 {¶ 23} In order to affirm a summary judgment, a reviewing court must determine that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C). An appellate court's review of summary judgment is de novo. Long v. TokaiBank of California (1996), 114 Ohio App.3d 116, 119.
 {¶ 24} We conclude that Searcey failed to demonstrate any questions of fact with regard to coverage. Therefore, we conclude that the trial court did not err in rendering summary judgment against him. Accordingly, Searcey's assignments of error are overruled.
 III {¶ 25} Erie's sole assignment of error on cross-appeal states as follows:
 {¶ 26} "THE TRIAL COURT ERRED IN HOLDING ERIE LACKED STANDING TO REQUEST RULINGS FROM THE TRIAL COURT, BECAUSE ERIE HAD A PERSONAL STAKE IN THE OUTCOME OF THE SEARCEYS' DAMAGES HEARING AGAINST THE [TORTFEASORS]."
 {¶ 27} Following the entry of the summary judgment in Erie's favor, the trial court determined that Erie lacked standing to file any motions with regard to the damages hearing pending between Searcey and the tortfeasor. Erie contends that this was error.
 {¶ 28} We note that this argument is rendered moot by our resolution of Searcey's claims in Part II, above. We further note that Erie has failed to demonstrate prejudice, since the trial court also concluded that Erie would not be bound by any default judgment obtained by the Searceys against the tortfeasors. Therefore, Erie's sole assignment of error is overruled.
 IV {¶ 29} All of Searcey's assignments of error, and Erie's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Grady, P.J., and Donovan, J., concur.
[1] Clyde Searcey died just prior to the entry of the summary judgment and the administrator of his estate was substituted as a party to the action. For the sake of clarity and ease of reference, we will refer to the plaintiffs as Searcey throughout this opinion.