OPINION
{¶ 1} D'Arcy Walther, as administrator of the estate of George N. Walther, Jr. ("the estate"), appeals from a ruling of the Montgomery County Court of Common Pleas, which concluded that the estate did not have title to a 1934 Duesenberg automobile and granted partial summary judgment to Jeffrey Walther ("Jeffrey"), Citizens Motorcar Company dba America's Packard Museum ("Citizens"), Robert E. Signom II ("Signom"), and Leo Gephart, Inc. ("Gephart"). George N. Walther Jr. ("George") was the father of Jeffrey and of D'Arcy Walther ("D'Arcy"), who are halfbrothers.
 {¶ 2} For the most part, the facts underlying this litigation are undisputed.
 {¶ 3} On September 28, 1987, Gephart sold a 1934 Duesenberg sedan, serial number J234, to Jeff Walther Dodge. Jeff Walther Dodge was solely owned and controlled by Jeffrey. In 1993, the dealership transferred the title of the Duesenberg to Jeffrey personally. In April 1994, Jeffrey pledged the car as collateral for a loan from Star Bank. This action apparently prompted George, who claimed to be the equitable owner of the Duesenberg, to draft a verified complaint against Jeffrey. However, no action was brought. George paid Star Bank in full, and the bank signed the lien discharge on the title. Jeffrey sold his dealership to Voss.
 {¶ 4} At the closing of the sale of Jeff Walther Dodge, Jeffrey gave George the title to the Duesenberg. The title was issued "in blank," i.e., the document did not state to whom the title would be transferred. Neither George — nor anyone else — was identified as the transferee. The price was listed as $0. Jeffrey had signed his name to the back as transferor, but the signature was not notarized. (The title presented to the trial court by the estate appeared to have been notarized by R.C. Brown on July 7, 1995. However, Brown disavowed any knowledge of this notarization, and the parties agree that the instrument was not notarized prior to George's death.) The Duesenberg was stored at "the boathouse," which is part of a complex of buildings in West Carrollton that were owned by George. Between 1994 and 1998, George attempted to return the title to Jeffrey on several occasions. Each time, Jeffrey returned the title to George.
 {¶ 5} George died on March 9, 1998. At that time, both the title and the Duesenberg were in George's possession. There was no evidence that George had obtained a certificate of title in his name prior to his death. D'Arcy, in his capacity as executor, took the Duesenburg to America's Packard Museum, a car museum in Dayton, Ohio, owned and operated by Signom, for safekeeping.
 {¶ 6} On September 24, 1998, Jeffrey obtained a duplicate title to the Duesenberg in his own name. In June 1999, Jeffrey obtained a loan from Liberty Savings Bank, pledging the automobile as security for that loan. After Jeffrey defaulted on the loan, Liberty Savings brought suit. On August 6, 2001, Jeffrey sold the Duesenberg to Gephart for $150,000, and used most of the proceeds to pay the indebtness to the bank. The automobile was removed from the museum, Gephart took possession of the automobile, and he obtained an Arizona certificate of title.
 {¶ 7} On October 5, 2001, the estate brought suit against Jeffrey, alleging that the estate was the "true owner" of the Duesenberg and that Jeffrey had converted the vehicle. The estate sought a declaratory judgment, damages, and replevin. On March 17, 2003, the estate filed an amended complaint, adding Citizens, Signom, and Gephart. The estate also alleged that George had delivered $75,000 to Jeffrey for a 25 percent interest in Digital Interface Gauge Inspection Terminal, Inc. ("DIGIT"), of which Jeffrey was president, and that Jeffery had breached their contract by failing to deliver the DIGIT shares to George. Jeffrey filed a counterclaim for defamation. Signom also counterclaimed, alleging that the estate had failed to pay for legal work that he had performed for the estate.
 {¶ 8} Each of the defendants sought summary judgment on the estate's claims, claiming that the issue of ownership was governed by R.C.4505.04(B) and Saturn of Kings Automall, Inc. v. Mike Albert Leasing,Inc., 92 Ohio St.3d 513, 2001-Ohio-1274, 751 N.E.2d 1019. The estate opposed the motions and sought partial summary judgment in its favor. The estate claimed that R.C. 4505.06 was dispositive, that the omissions from the title did not render the transfer to George ineffective, and that Jeffrey had given the Duesberg to George as a gift. The estate further argued, relying upon Hardware Mut. Cas. Co. v. Gall (1968),15 Ohio St.2d 261, 240 N.E.2d 502, that Jeffrey's 1998 duplicate title was void as a matter of law, because the prior title was neither lost, stolen, nor destroyed, and therefore he could not transfer good title. In its reply memorandum, the estate further clarified that "[t]he question here, however, is not whether [Jeffrey] technically succeeded in transferring the title to George, but whether by his conduct heobligated himself to transfer it. That obligation would be enough to sustain the estate's claim regardless of whether title actually was passed." (Emphasis sic).
 {¶ 9} On April 26, 2004, the trial court granted Gephart's, Citizen's, and Signom's motions for summary judgment; overruled in part and granted in part Jeffrey's motion for summary judgment; and overruled the estate's motion for partial summary judgment. Relying on R.C. 4505.04, the court stated that it must not recognize George's claimed interest in the Duesenberg unless evidenced by a certificate of title. The court concluded that Jeffrey did not transfer the title to George in 1994, because George's name had not been inserted in the application for title and Jeffrey's signature had not been properly notarized. Moreover, the purported transfer of title to George had never been properly executed pursuant to R.C. 4505.06. The court also rejected the estate's argument that Jeffrey had given the automobile to his father as a gift, reasoning that a legal transfer of title was necessary to effectuate a gift. Having found that the estate had no interest in the Duesenberg, the court granted summary judgment to Citizens, Signom and Gephart on the estate's claims against them. The court denied Jeffrey's motion for summary judgment as to claims regarding DIGIT. On May 20, 2004, the trial court certified its decision under Civ.R. 54(B).
 {¶ 10} The estate raises two assignments of error on appeal, which we will address together.
 {¶ 11} "I. The Trial Court's April 26, 2004 decision granting the defendants' motions for summary judgment on all claims concerning the 1934 duesenberg at issue was error.
 {¶ 12} "II. The Trial Court's April 26, 2004 decision denying the plaintiff's cross-motion for summary judgment for declaratory judgment relating to the parties' competing claims for title to the duesenberg was error."
 {¶ 13} In its assignments of error, the estate claims that the estate had the right to the title, and that the trial court incorrectly relied upon Saturn and R.C. 4505.04 to find that, because George was never given legal title to the car, the estate had no such right. The estate argues that, based on his actions, Jeffrey was obligated to transfer title of the Duesenberg to the estate.
 {¶ 14} The estate's argument is broken down into three logical steps: (1) the party with legal title may, under certain circumstances, be required by the court to convey title to a party with an equitable interest in the vehicle; (2) Jeffrey's purported transfer of the Duesenberg to Gephart does not affect whether the estate is entitled to the title; and (3) Jeffrey's delivery of the car to George in return for George's payment of Jeffrey's debt to Star Bank obligated Jeffrey to transfer ownership to George.
 {¶ 15} Initially, we note that the estate has conceded that the trial court "concluded, correctly, that Jeffrey had not succeeded in transferring the title to George when he tried to, the problem being that Jeffrey neglected to sign the `Assignment of Ownership' in the presence of a notary and to fill in the name of the assignee." In addition, the estate appears to have abandoned on appeal its argument that Jeffrey gave the Duesenberg to his father as a gift — despite the fact that the title had never been properly assigned — and that the estate is the "true" owner of the vehicle on that basis. Rather, the estate has limited its argument to the theory that, "[h]aving obtained the benefit from George [of George paying Jeffrey's debt that was secured by the car], Jeffrey cannot now withhold what he promised — indeed, not merely promised, but actually tried to give — in return."
 {¶ 16} We will begin our analysis with the Ohio Certificate of Motor Vehicle Title Law. Pursuant to R.C. 4505.04(B), no court "shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered" unless evidenced by a certificate of title, by admission in the pleadings, by stipulation of the parties, or by an instrument showing a valid security interest.
 {¶ 17} The supreme court has stated that R.C. 4505.04 applies where parties assert competing rights or competing interests in a motor vehicle. State v. Rhodes (1982), 2 Ohio St.3d 74, 75, 442 N.E.2d 1299;Grogan-Chrysler Plymouth, Inc. v. Gottfried (1978), 59 Ohio App.2d 91,94, 392 N.E.2d 1283; Rucker v. Alston, Montgomery App. No. 19959, 2004-Ohio-2428. "R.C. 4505.04 was intended to apply to litigation where the parties were rival claimants to title, i.e., ownership of the automobile; to contests between the alleged owner and lien claimants; to litigation between the owner holding the valid certificate of title and one holding a stolen, forged or otherwise invalidly issued certificate of title; and to similar situations." Grogan Chrysler-Plymouth, Inc.,59 Ohio App.2d at 94, cited by Hughes v. Al Green, Inc. (1981),65 Ohio St.2d 110, 115-116, 48 N.E.2d 1355 and Saturn,92 Ohio St.3d at 518. Over time, the supreme court has carved out several exceptions to the applicability to R.C. 4505.04. See State v. Shimits
(1984), 10 Ohio St.3d 83, 461 N.E.2d 1278 (forfeiture case); Hughes v. AlGreen, Inc. (1981), 65 Ohio St. 2d. 110, 418 N.E.2d 1355 (risk of loss);Smith v. Nationwide Mut. Ins. Co. (1988), 37 Ohio St.3d 150, 524 N.E.2d 507
(owner for purposes of insurance coverage); see, also, Saturn,92 Ohio St.3d at 516 (recognizing that, although the language of R.C.4505.04(A) and its precursor statute, G.C. 6290-4, has remained substantially unchanged since its enactment, the judiciary's interpretation of the statute has varied).
 {¶ 18} Recently, in the context of a commercial transaction, the supreme court has held that a proper transfer of title to the purchaser is required in order for the purchaser to obtain a recognizable interest in the automobile. In Saturn, two dealers held title to automobiles that were sold to Gallatin, another dealer. Gallatin was permitted to obtain possession of the vehicles prior to its paying for the vehicles, but the dealers retained the titles to the vehicles pending receipt of payment. Gallatin subsequently sold the vehicles to Albert Leasing, Inc., and received payment for them. However, Gallatin failed to remit payment to the two dealers. Consequently, the dealers sought replevin of the vehicles and damages.
 {¶ 19} On appeal to the supreme court, the parties disputed whether the action was governed by R.C. 4505.04 or the Uniform Commercial Code, particularly R.C. 1302.44, which addresses entrustment. The court concluded that "[i]n determining competing claims of ownership of a motor vehicle, R.C. 4505.04(A) controls over the provisions of the Uniform Commercial Code." Id. at syllabus. Applying that statute to the facts, the court ruled that, since the dealerships had retained the certificates of title and they had never been assigned to Gallatin, Gallatin had never been the lawful owner of the vehicles. Thus, Gallatin could not pass title to the purchasers.
 {¶ 20} The estate relies primarily upon Bobby Layman Chevrolet v.Spire Motor Co., 157 Ohio App.3d 13, 2004-Ohio-2025, 808 N.E.2d 902, which presents virtually identical facts as those in Saturn. Layman Chevrolet had given vehicles to McLuney Auto Auction with instructions to sell the vehicles; Layman retained the titles to the vehicles. McLuney subsequently sold the vehicles and received payment. However, McLuney went out of business and failed to pay Layman. The trial court ordered replevin of the vehicles from the buyer to Layman. The court of appeals reversed. Following Saturn, the court held that R.C. 4505.04 applied to the dispute. However, it distinguished Saturn, noting that Layman had stipulated that McLuney had acted as its agent in selling the vehicles. The court found that, while "the Certificate of Title Act protects Layman Chevrolet from an obligation to transfer title pursuant to an entrustment theory, the law does not protect Layman Chevrolet from the obligations it accepted by appointing McLuney as its agent and directing McLuney to sell the vehicles." 157 Ohio App.3d at 16.
 {¶ 21} Even if we were to agree with the reasoning in Layman, we find no evidence in the record that Jeffrey had legally obligated himself to transfer title of the Duesenberg to his father. According to the estate, Jeffrey's obligation to transfer the title to George arose out of George's payment of Jeffrey's indebtedness to Star Bank. Although Jeffrey testified that he was unaware that his father was upset about his pledging the Duesenberg as collateral, George signed (but did not file) a verified complaint which alleged that Jeffrey had fraudulently transferred title from the dealership to himself personally and had impaired George's rights to the vehicle by pledging it as collateral to Star Bank. It is undisputed that George did not file suit, that George paid the indebtedness to Star Bank, and that Jeff Walther Dodge, which was in financial trouble, was sold in November 1994. Jeffrey testified that he signed the title to the Duesenberg and gave it to his father at the closing of the sale of the dealership. Jeffrey offered to have his signature notarized at that time, but George declined the offer.
 {¶ 22} The estate apparently believes that Jeffrey attempted to assign the Deusenberg to his father as repayment for George's payment of the Star Bank loan and for not pursuing a lawsuit against Jeffrey. However, there is no evidence to that effect. Jeffrey testified that he had repaid his father $1.3 million in checks regarding Jeff Walther Dodge and that his father had stated that he felt that he had been repaid in full. Jeffrey denied that his signing of the title was intended as repayment. Jeffrey stated that he had offered the Duesenberg to his father as "a good faith attempt to my father to be happy with the sale." He further testified that George had neither demanded nor requested that the Duesenberg be assigned to him. To the contrary, Jeffrey testified that his father repeatedly returned the title to Jeffrey. Although the estate claims that it is undisputed that "Jeffrey persuaded George to forego his proposed lawsuit by delivering the car to George," the estate has failed to produce any evidence to contradict Jeffrey's testimony. Accordingly, there is no evidence that Jeffrey legally obligated himself, i.e., by way of contract, to convey the Duesenberg to George.
 {¶ 23} This case is thus distinguishable from Layman in that the dealer therein had obligated itself to convey the title when it had sold the vehicle and had accepted payment therefor. Although Jeffrey may have felt a moral obligation to give the automobile to his father, there is no evidence of a contractual or statutory obligation. Construing the evidence in the light most favorable to the estate, we conclude that the estate has failed to raise a genuine issue of material fact that Jeffrey was legally obligated to assign the title to George. Because the issue has not been raised on appeal, we state no opinion as to whether George could have obtained ownership of the Duesenberg as a gift in the absence of a proper transfer of title by Jeffrey and whether a genuine issue of material fact exists as to whether the automobile was, in fact, given to George as a gift.
 {¶ 24} Because there is no evidence that Jeffrey was obligated to properly assign the Duesenberg title to the estate and because the parties have agreed that Jeffrey had not transferred the title to his father and, thus, he remains the title holder, we agree with the trial court that there is no genuine issue of material fact that Jeffrey was the owner of the Duesenberg and was free to transfer ownership of that vehicle to Gephart.
 {¶ 25} The assignments of error are overruled.
 {¶ 26} The judgment of the trial court will be affirmed.
Brogan, P.J. and Grady, J., concur.